**ROBERTSON v. ROUTZAHN, Collector of Internal Revenue.**

No. 6374.

Circuit Court of Appeals, Sixth Circuit.

Feb. 8, 1935.

A. M. Van Duzer, of Cleveland, Ohio (Henry W. Wales and Miller, Gorham, Wales & Adams, all of Chicago, Ill., and McKeehan, Merrick, Arter & Stewart and George William Cottrell, all of Cleveland, Ohio, on the brief), for appellant.

Helen R. Carloss, of Washington, D. C. (Wilfred J. Mahon and John B. Osmun, both of Cleveland, Ohio, and C. M. Charest and S. E. Blackham, both of Washington, D. C., on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This was an action for refund of $3,-531.85, taxes paid under protest upon a deficiency assessment. A jury trial was waived, and the District Court rendered judgment against the taxpayer. Robertson v. Routzahn, 1 F. Supp. 355.

The questions presented relate to the fair market value on March 1, 1913, of 700 shares of common stock of The Firestone Tire & Rubber Company, and involve income for 1925. The case arises under sections 202 (a) and 204 (b) of the Revenue Act of 1924 (26 USCA §§ 933 (a), 935 (b), and Article 1591, Treasury Regulations 65. The burden was on the appellant to prove the facts establishing the invalidity of the

tax. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347.

On and prior to March 1, 1913, appellant owned certain shares of common stock of The Firestone Tire & Rubber Company, which by virtue of surrender and exchange of stock in 1916 resulted in a reissue which included the 700 shares in question. During the year 1925 appellant sold 715 shares, including those here involved. The Commissioner determined that the fair market value as of March 1, 1913, was $431.85 per share on the basis of the old stock, that appellant realized from such sale of 700 of the shares a capital gain of $61,108.74 instead of $35,854.87, as reported in appellant's income tax return, and assessed the tax deficiency in question here.

The District Court found that the stock had a fair market value as of March 1, 1913, of not to exceed $43.18 per share on the basis of the new shares, or $431.85 per share on the basis of the old shares.

Appellant contends that the original shares had a fair market value of $785 each on the basic date. He urges (1) that the court erred in not applying the proper factors of valuation; (2) that there is no substantial evidence in the record supporting the finding; (3) that the court erred in the rejection and admission of evidence.

■ Fair market value is the price in money or its equivalent that the property will bring at a voluntary sale to a willing buyer, both the seller and buyer having adequate knowledge of the material facts affecting the value. Stiles v. Commissioner, 69 F.(2d) 951 (C. C. A. 5); Curtiss v. Commissioner, 57 F.(2d) 847 (C. C. A. 5).

■ On the first point, the court did not err in considering the evidence of market sales of this stock. While this evidence was not conclusive, it had probative force. The rule is not that sales in small lots may never constitute evidence of fair market value, but that such sales are to be considered together with all the attendant circumstances. Cf. Walter v. Duffy, Collector, 287 F. 41 (C. C. A. 3); Heiner, Collector, v. Crosby, 24 F. (2d) 191 (C. C. A. 3).

On the point of actual market sales, the record presents a report made to the firm of Borton & Borton, brokers who handled Firestone stock in Cleveland, as shown by the records of the Cleveland Stock Exchange, covering a period from January 8 to April 28, 1913. The report listed twenty-two individual sales ranging from sales of five to fifty shares, totaling 235 shares. The prices received ranged from 222½ low to 360 high, the price upon March 1 being 295½. Upon March 3 twenty shares were sold at 299. Upon March 12, fifty shares were sold at 298. Fred S. Borton, witness for appellant, stated that any one would be a "sucker" to pay more than the quoted market price for the stock of The Firestone Tire & Rubber Company. He said that these prices did not represent the fair market value on the basic date, but that he knew of no purchases or sales substantially at variance with the quoted market price. The report does not purport to give a complete account of sales during this period, for there were "about" four different brokers dealing in Firestone stock at that time in Cleveland and in Akron. The total number of shares transferred in 1913 was 2,233.

■ The court did not err in confining the taxpayer in his evidence to showing the financial state of the Firestone Company by conditions in the business existing in 1912 up to March 1, 1913. This record does not disclose that the earnings of 1914, 1915, and 1916 could be reasonably anticipated upon March 1, 1913. From 1904 to 1919 there was a great increase in the value of the company's assets. However, this increase came mainly after 1913. The enormous expansion of the company which later developed had not been substantially realized by the close of 1913.

■ The market value of shares of stock, in the absence of a showing that the future will bring a change in the profits of the company, is largely determined by the earnings in the previous year. Johnson v. United States, 44 F.(2d) 244 (Ct. Cl.).

The Commissioner computed the fair market value per share as of March 1, 1913, by an application of Appeals and Review Memorandum No. 34, Internal Revenue Cumulative Bulletin No. 2, page 31, applying the third method suggested in that memorandum. The Commissioner was liberal with the taxpayer, for while the Appeals and Review Memorandum required the consideration of average earnings over a period of years prior to March 1, 1913, he considered average earnings for five years, ending July 31, 1914. We know of no adjudication in which, for the purpose of valuing stock sold on the market, the computation under Appeals and Review Memorandum No. 34 has been required to be made on the basis of earnings subsequent to March 1,

1913. In Pfleghar Hardware Specialty Co. v. Blair, Commissioner, 30 F.(2d) 614 (C. C. A. 2), the good will value of a manufacturing plant was determined by taking into consideration with other factors the annual net income for a series of years ending December 31, 1912. See also White & Wells Co. v. Commissioner, 50 F.(2d) 120 (C. C. A. 2), in which the average earnings for each of the five calendar years immediately preceding March 1, 1913, were used as the basis of valuation. The court reversed the order of the Board of Tax Appeals in that case upon the ground that it was erroneous to apply the formula to a period of only three years, one of which was exceptionally poor. In Lucas, Collector, v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906, the court held that the value of an insurance policy having no market value on March 1, 1913, was not to be determined by making a prediction as of that time based upon an estimate of future possibilities.

Neither did the court commit prejudicial error in refusing to assign a greater value to this stock on the basic date by the addition of certain depreciation charged by the company against earnings from 1909 on, and disallowed by the Commissioner in 1916. In view of the liberal application by the Commissioner of Appeals and Review Memorandum No. 34, this ruling could not have prejudiced the appellant.

Upon the question of substantial evidence the finding of the District Court is amply sustained. Testimony was presented to the effect that the fair market value of the stock on March 1, 1913, was in excess of $431.85. However, the court is of opinion that the evidence of the book value of the stock on the basic date before depreciation adjustment, of the prices at which sales were actually made about that time, and the opinion evidence of the accountant, a valuation expert and a broker who set the value at considerably less than $431.85, is substantial evidence supporting the finding of the District Court.

While appellant's statement as to the value of the stock ($750 per share) was positive, the court rightly took into consideration the fact that in his sworn income tax returns for 1923 and 1924, appellant stated that the fair market value on the basic date was $293 per share. He was treasurer of the Firestone Company from 1909 until 1922, and a director from 1908 to 1925, and

he can hardly claim that his own returns were made in ignorance of the facts.

The record does not exhibit one case of a forced sale, and nothing like the mutualization and three-year investigation which deprived the insurance stock of a market in Walter v. Duffy, Collector, supra; and no trust agreement existed, as in Heiner, Collector, v. Crosby, supra.

We find no reversible error in the admission or rejection of evidence.

The judgment of the District Court is affirmed.