**JENKINS et al. v. SMITH, Collector of Internal Revenue.**

No. 3912.

District Court, D. Connecticut.
Nov. 8, 1937.

252

Curtiss K. Thompson and John H. Weir, both of New Haven, Conn., for plaintiffs.

James W. Mòrris, Asst. Atty. Gen., Andrew D. Sharpe and Maurice J. Mahoney, Sp. Assts. to the Atty. Gen., and Robert P. Butler, U. S. Dist. Atty., and Louis Y. Gaberman, Asst. U. S. Dist. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge.

This is an action to recover alleged excessive estate taxes in the amount of $3,440.42 with interest, due to what the plaintiffs contend was an erroneous valuation of certain corporate stock.

The decedent at the time of his death on November 1, 1934, was the owner of 17,679 shares of stock of American Home Products Corporation. This stock was valued as of the date of death by the plaintiffs, as executors, in making the estate tax return, at $30 per share, and the tax was calculated and paid on that valuation. The Commissioner of Internal Revenue determined the fair market value as of the date of the decedent's death to be the sum of $31.50 per share, and assessed a deficiency on that basis. The deficiency was paid by the executors and a claim for refund was duly filed and disallowed, whereupon this action was brought.

The $30 per share figure was the valuation made by the executors as of November 1, 1934, the date of the decedent's death. One of the executors was the Union & New Haven Trust Company, and the opinion of its officers as to the fair market value of the stock is not lightly to be disregarded. The $31.50 figure is the revised valuation made by the Commissioner of Internal Revenue, without explanation in the deficiency letter. In the letter announcing and explaining rejection of the claim for refund, the Commissioner quotes article 13 (3) of Estate Tax Regulations 80, to the effect that the value of stocks and bonds listed upon a stock exchange shall be obtained by taking the mean between the highest and lowest quoted selling prices upon the date of death, and, if there were no sales on the date of death, then by taking the mean between the highest and lowest sales upon the nearest date either before or after the date of death, if within a reasonable period of time. He then cites sales on October 31, 1934, at $31.50 a share, and on November 2, 1934, at $32 a share.

The only question in this case is, What was the fair market value of the stock on November 1, 1934. This is a

question of fact, which must be determined upon the evidence. In making its determination of fact the court is not sitting as an appellate tribunal reviewing the decision of the Commissioner, but is trying the case de novo. The regulations upon which the Commissioner acted, or purported to act, cannot bind this court as to method by which we may determine a fact.

On the other hand the burden is on the plaintiffs of establishing that there has been a tax overpayment, and the amount thereof. They must prove, in order to prevail, that the value of the stock on November 1, 1934, was less than $31.50 per share. They cannot win merely by attacking the regulations.

I make these observations because the defendant's brief states that the ultimate question is whether the pertinent Regulations of the Treasury Department with respect to the valuation of stocks and bonds for estate tax purposes are valid or invalid, and the briefs on both sides deal primarily with that question. I do not agree that that question is involved. The issue before the court is an issue of fact, to wit, what was the value of certain shares of stock on November 1, 1934, and that issue must be decided on the evidence, and not on rules laid down by the Treasury Department.

By stipulation it appears that there were sales on the stock exchange on the date of decedent's death at $31.50 up to $31.75 per share on a very small lot and that only 200 shares were sold during the entire week in which that date fell. Expert witnesses said that a block of 17,679 could not have been sold "at the market" on that date, and that it would have been necessary to negotiate a private sale at from 1 to 2½ points below the exchange quotations. Beginning on November 26, 1934, the executors began selling the stock in small lots, and on December 5 and 6, 1934, and January 5, 1935, disposed of large blocks, all at varying prices, which averaged $29.75 per share for 17,202 shares, thus sold from the total of 17,679 shares held by the executors.

In determining the fair market value of any kind of property, the first thing to do is to define the object of the inquiry. The term "fair market value" comes from the realm of business and economics, and from the viewpoint of the court is a fact, an existing condition, which must be ascertained, but not created or altered by any rule of law. Primarily, it means the price at which a specified quantity of a given economic good is actually sold. It is an accomplished fact. More frequently, however, it means general or future power in exchange. But when we speak of fair market value as of a given past date, the term means the price that probably would have resulted had the good been exchanged between a willing, informed, and normal buyer and a similar seller. Prof. R. T. Ely, in Outlines of Economics (5th Rev.Ed.) at page 220.

Prof. Ely points out, on page 223, that valuations are estimates. He says: "The price or value that might be expected to obtain rests upon opinion and judgment. No more tangible or definite basis can be found. Valuations, like demand and supply curves, are of the stuff that dreams are made of,—judgment, opinion, forecasts, of the future. Upon such foundations rests the modern business world."

Prof. Ely also points out that market value changes with the quantity valued. It is not to be assumed, however, that a large block of shares will sell at less per share than a small block. This, if true, in any particular case, must be established by evidence. If no better evidence is available, opinion evidence may be sufficient, because, as above shown, valuation is necessarily a matter of opinion.

Although there was no actual necessity for a sale of the total block of stock on the date of the decedent's death, the determination of the fair market value as of that date requires the estimation of the price that could have been obtained for all the shares on that day, for the reason that fair market value as of a given date means the price that could actually have been realized on that date. Since market value varies with the quantity offered, (in this respect differing from intrinsic value), the effect of placing the 17,679 shares in the market at one time is a factor of great importance.

In the "Law of Federal Income Taxation", by Paul and Mertens, vol. 5, § 52, 17 A. Supplement, the authors say: "It is incorrect, however, to assume that the value of each unit can be determined without reference to the value of the whole block or aggregate of stock or securities owned by the taxpayer. In a determination of intrinsic value it may be proper to

254

determine the value of each unit without reference to the size of the block owned and without reference to the absorbing qualities of the market. However, the statute requires a determination of the fair market value and not intrinsic value. The determination of market value requires a consideration of the salability of the entire block held."

 Actual exchange quotations are, of course, the best evidence of the fair market value of stock, provided they refer to representative sales. In order to be representative, the amount of stock sold must bear some reasonable relation in volume to the amount of stock being valued. In the instant case, out of 672,100 shares outstanding, of which 17,679 are to be valued as of November 1, 1934, less than 200 shares were sold during the entire week in which that date occurred. The prices obtained for 200 shares are not representative of the price at which a block of over 17,000 shares could have been sold. The exchange quotations reflect that market value of small lots of shares but not of a large block.

It may seem theoretically that a large number of shares in a block should have a value equal to the number of shares times the market value of each share, but here theory is not in accord with actual fact. The explanation may be in the fact that market value does not necessarily reflect true value. But the value designated by the statute is market value, and however illogical that value may be, it is the value which must be ascertained. Intrinsic value may be a more accurate index to use for tax purposes, but, whether it is or not, Congress has chosen to use market value as the base.

Plaintiffs' experts have testified that in their opinion the stock could not have been sold on the exchange at one time, and that negotiation of a private sale would have been necessary, at a price from 1 to 2½ points below the prevailing exchange quotations. Negotiation of a private sale would and did require a period of time. The testimony of the experts is confirmed by subsequent events, as plaintiffs sold the stock at private sale within three months after the decedent's death, at an average of $29.75 per share.

The exchange quotations do not furnish a fair index of the value of the block of stock involved. The testimony of plaintiffs' experts is uncontradicted, and I find as a fact that the 17,679 shares of stock of the American Home Products Corporation owned by the decedent at the time of his death had a fair market value, on that date, November 1, 1934, of $30 per share, or $530,370.

Therefore, judgment may be entered for the plaintiffs to recover from the defendant the sum of $3,440.42, with interest from September 11, 1936, on $3,253.35, and from October 18, 1936, on $187.07, in accordance with paragraph 4 of the stipulation of facts.