## COMMISSIONER OF INTERNAL REVENUE v. SHATTUCK.

### No. 6539.

Circuit Court of Appeals, Seventh Circuit.

July 5, 1938.

James W. Morris, Asst. Atty. Gen., J. Louis Monarch and A. F. Prescott, Sp. Assts. to Atty. Gen., and Warren F. Wattles, of Washington, D. C., for petitioner.

Louis Quarles, of Milwaukee, Wis., R. S. Doyle, of Washington, D. C., and Maxwell H. Herriott, of Milwaukee, Wis., for respondent.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals entered July 2, 1937, which involves a deficiency in gift taxes in the amount of $11,325.

Respondent, a resident of Neenah, Wisconsin, on August 4, 1934, made five gifts of 6000 shares each of the common stock of Kimberly-Clark Corporation of Neenah, Wisconsin. On the same date, he made five gifts of 2000 shares each of the common stock of International Cellucotton Products Company. Respondent returned the Kimberly-Clark stock at a value of $10.25 per share and the International stock at a value of $8.25 per share. The Commissioner determined the value of the stocks as of the date of the gifts to be $13 and $10 per share respectively. The values found by the Board were $10 and $7.50 per share respectively. It is this

difference in valuation which accounts for the alleged deficiency in taxes.

The amount of common stock of Kimberly-Clark Corporation outstanding in 1934 was 487,173 shares. It was listed on the New York Stock Exchange, but during this year only 10,200 shares were transferred, of which 6000 shares changed hands prior to August, 1934. On the date the gifts of this stock were made, the bid was 12 and the asked 14 per share, the mean of which was the value determined by the Commissioner.

The amount of common stock of International outstanding on July 1, 1934, was 294,152 shares. During the calendar year it was not listed or dealt in upon any stock exchange. It was, however, dealt in over the counter—less than 6000 shares being transferred on the books of the company in that year in transactions involving small amounts of the stock. The records of two brokerage houses in Chicago disclose that on August 4, 1934, the bid for this stock was 9½ and the asked 10½. The mean of bid and asked was the value determined by the Commissioner.

Petitioner relies solely upon the related situation as being determinative of the value of the stock. Respondent, before the Board, offered the testimony of a number of expert witnesses, qualified as such, who were permitted to give their opinions as to the actual value of the stock at the time and under the circumstances presented.

The essential questions presented are, first: is there any substantial evidence to support the Board's findings of the value of stock? and second: whether Article 19 of Regulations 79 promulgated under the Revenue Act of 1932 is valid, insofar as it provides that in determining the value of a gift "the size of the gift of any security is not a relevant factor."

The pertinent statutory provision is Section 506 of the Revenue Act of 1932, as follows:

"[Sec. 506]. Gifts made in property. If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." U.S.C., Title 26, Sec. 555, 26 U.S.C.A. § 555.

The material portion of Article 19 of Regulations 79 provides:

"If the value of a security cannot be determined by sales, or from bid and asked prices, as prescribed in the preceding provisions of this subdivision, then * * * in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. * * *

"* * * * The size of the gift of any security is not a relevant factor and will not be considered in such determination."

If the size of the gift cannot be considered in determining the value of the stock involved, then it would seem that the Board was in error in its conclusion. If it is held that the regulation is to be strictly followed, it would appear that the testimony of expert witnesses was improperly received and under such circumstances, it could not be said that there is substantial evidence to sustain the finding of the Board.

At the time the Board considered this case, there was before it also the case of Kimberly v. Commissioner, which involved a gift tax liability for the same year with reference to the value of shares of the same corporate stocks. The issues raised were precisely the same in each case and they were consolidated and heard together. The decision of the Board of Tax Appeals in the Kimberly Case was reviewed by the Circuit Court of Appeals of the Fourth Circuit and decided June 6, 1938, entitled Helvering, Commissioner, etc., Petitioner, v. James C. Kimberly, Respondent, 97 F.2d 433. The petitioner raised the same questions as those here presented. The court decided the issues in favor of the tax payer, and on page 434 of its opinion said:

"The evidence as to the value of the two kinds of stock was uncontradicted. It was given by persons with long experience as investment brokers who were familiar with the capital structure, the earnings and the stock transactions of the corporations. They qualified as experts and their testimony furnished a substantial basis for the findings of value by the Board. That it is proper in such a case to give weight to opinions of this sort, notwithstanding the restrictive provisions of the regulations, we decided in an opinion handed down on April 5, 1938 in the case of Helvering v. Safe Deposit & Trust Company of Baltimore, Executor of Henry Walters, 4 Cir., 95 F.2d 806, where a discussion of the matter will be found."

In the case of Helvering v. Safe Deposit and Trust Company of Baltimore, Etc., cited in the quotation from Helvering v. Kimberly, supra, the court considered how the value of an estate of a decedent subject to the Federal Estate Tax should be determined. There, Treasury Regulations 80 was applicable which contained the exact language as that contained in the regulations, under consideration regarding the size of the holdings of any security as not being a relevant factor in determining value. Thus, was presented the same question as we have here. In discussing the matter, the court on page 810 of 95 F.2d said:

"In short, the Board accepted the testimony offered on behalf of the estate with regard to the depressing effect upon prices that occurs when a market is sought for a large block of stock, and declined to be bound by the restrictions of the regulation. As a general rule, a regulation of an executive department, passed under statutory authority, is valid; but a negotiation which 'operates to create a rule out of harmony with the statute, is a mere nullity, * * * and not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable.' Manhattan Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528."

Again on page 812 it is said:

"In our opinion, the Board was right in basing its conclusions upon the realities as it found them rather than upon considerations of abstract logic. It could not ignore the pregnant fact, having found it to exist, that a large block of stock cannot be marketed and turned into money as readily as a few shares. The opposite condition might possibly have prevailed, for the influence of the ownership of a large number of shares upon corporate control might give them a value in excess of prevailing market quotations; in which event the application of the administrative rule would be unfair to the government."

Thus, we have these two opinions of the Fourth Circuit Court of Appeals deciding against the contention here made by the petitioner. We agree with the conclusion reached by that court. Clearly, it would seem that the regulations exceed the power of the Commissioner, if the construction sought by the Commissioner be placed thereon. The Statute, imposing the gift tax, measures such tax by the value of the property on the date of the gift and no regulation can control which seeks to preclude the consideration of any element or factor which has a material bearing upon such value. The regulation purports to make an irrebuttable presumption by means of an absolute prohibition of testimony which is relevant and pertinent to the factual issue named in the Statute. In discussing a statutory presumption of similar character, the Court in Heiner v. Donnan, 285 U.S. 312, on page 329, 52 S.Ct. 358, on page 362, 76 L Ed. 772, said:

"This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment."

To hold that the value of a large block of corporate stock, for which there is no market, must be determined at the same value per share as that for which a few shares were sold, for which there was a market, without taking into consideration other factors and circumstances which plainly affects the value is supported by neither logic nor reason. It is a matter of common knowledge that the value of any product or commodity, whether it be wheat, hogs or otherwise, is affected by the law of supply and demand, and that where the former far exceeds the latter, it has a depressing effect upon value. Reference to the daily markets of the country support this statement. No doubt the value of corporate stock is similarly affected.

We agree with the statement of the Board of Tax Appeals, (decision unreported):

"This evidence further shows to our satisfaction that the 30,000 shares disposed of by each petitioner by gift could not possibly have been sold through the Stock Exchange, or otherwise, at the mean of the prices realized on the comparatively small quantity actually sold or the mean of the bid and asked prices on the date the gifts were made. Petitioners have presented the uncontradicted testimony of qualified witnesses familiar with the problem of disposing of stock of this character in blocks of this size, from which it is quite evident that such disposal could not have been effected except at so-called wholesale prices, by an arrangement for the underwriting of the disposal of the sale of stock which would have entailed an expense netting a price below that possible to have been se-

cured for small blocks of stock through market sales at retail."

The decision of the Board of Tax Appeals is

Affirmed.