### GAMBLE v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 7540.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1939.

Elden McFarland, of Washington, D. C. (Elden McFarland, of Washington, D. C., and Ike Lanier, of Cincinnati, Ohio, on the brief), for petitioner.

W. F. Wattles, of Washington, D. C. (James W. Morris, J. Louis Monarch, and Warren F. Wattles, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Petition by Cecil H. Gamble, Executor of the Estate of Mary H. Gamble, to review a decision of the Board of Tax Appeals finding a net unpaid deficiency of $28,258.26 in the estate tax of the decedent.

Mary H. Gamble, at the time of her death, January 5, 1929, owned 14,475 shares of the common stock of the Procter & Gamble Company and a $\frac{4}{15}$ interest in 1023 other shares. For the purpose of computing the estate tax [Rev.Act of 1926, Ch. 27, 44 Stat. 9, 70, Sec. 302(a), U.S.C. Tit. 26, Sec. 411, 26 U.S.C.A. § 411(a)] the Commissioner valued this stock at the date of decedent's death at $280.00 per share. The Board of Tax Appeals sustained this finding. The question, whether the Board erred, is one of fact.

The common stock of the Procter & Gamble Company had a par value of $20.00 per share. Its earnings had increased from $6.00 per share in 1923 to $14.83 in 1929. Its regular dividend rate was advanced from 16% in 1913 to 20% in 1916; to 25% in 1925; to 35% in 1926; and to 40% in 1927.

In addition to the regular dividends there were several special dividends and a stock dividend of 4% annually from 1913 to 1925 inclusive. The book value per share of the stock increased from $43.00 on June 30, 1924, to $58.95 on June 30, 1929. The net earnings available for dividends for 1928 were $15,071,324.00 and for 1929 $18,536,471.00. There were 1,250,000 shares of common stock outstanding. On the day of decedent's death the Procter & Gamble common stock was listed on the Cincinnati Stock Exchange but was not listed on the New York Exchange. In addition, it was traded in on the New York Curb and over the counter in Cincinnati. Over the counter transactions there would be at substantially the same price as that on the Exchange.

In 1928 there were 32,051 shares of Procter & Gamble stock sold on the Cincinnati Exchange. A detailed account of these transactions from November 5, 1928, to July 15, 1929, was in the record. It showed that from November 5, 1928, to March 5, 1929, the lowest price paid for the stock on the Cincinnati Exchange was $279.00 per share and the average price on January 5, 1929, was $280.00 plus per share.

On the following dates the stock sold on the Cincinnati Exchange as follows:

October 23, 25 shares from $278\frac{1}{4}$ to 279; October 24, 327 shares from 279 to 280; October 25, 20 shares from 279 to $279\frac{1}{2}$; October 29, 63 shares from $283\frac{1}{2}$ to 285; April 2, 1929, 182 shares from 347 to 350; May 28, 1929, 313 shares from 362 to 366.

By comparison we note the following prices paid by Procter & Gamble Company for its common stock in the over the counter market, on the corresponding dates:

October 23, 1928, 500 shares at $280.00 per share; on October 24, 550 shares at $280.00 per share; on October 25, 453 shares at $280.68; on October 29, 543 shares at $282.98; on April 2, 1929, 500 shares at $340.00; on May 28, 1929, 1000 shares at $360.00.

On April 15, 1929, the Procter & Gamble Company agreed with J. P. Morgan & Company to increase its common stock to 7,500,000 shares of no par value; to exchange 6,250,000 of the new shares for 1,250,000 of the old shares (a ratio of approximately 5 to 1) and to list the new shares on the New York Exchange not later than August 7 and sell to Morgan & Company 150,000 shares of the new stock for $66.66\frac{2}{3}$ per share and to give Morgan & Company an option to purchase 100,000 additional shares before February 12 at $80.00 per share. This option was subsequently exercised.

The record shows that on the basic date, January 5, 1929, there were 23 transactions in Procter & Gamble Company's common stock on the Cincinnati Exchange in which 959 shares were sold at an average price of $280 plus per share.

We need not go into a more detailed recitation of the evidence. The facts stated sustain the findings of the Board and conclude the case against the petitioner

unless the record as a whole clearly and convincingly requires a contrary conclusion [Tracy v. Commr., 6 Cir., 53 F.2d 575, 579] or unless there is some vital irregularity in the proceedings. Phillips v. Commr., 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289.

There is evidence tending to show that one brokerage firm, a member of the Cincinnati Exchange, had a habit of manipulating the market in a very small way so as to raise the closing price each day of Procter & Gamble common stock a point or a half point but there is no evidence that such a thing occurred on January 5, 1929, or that such practice had any substantial effect.

■ Petitioner's expert witness testified that the sale of 32,051 shares of the Procter & Gamble stock on the Cincinnati Exchange during 1928 represented a very narrow market or less than 3% of the total number of the outstanding shares and did not indicate a fair value for the stock, but this witness also testified that the New York Stock Exchange influenced Cincinnati rather than that Cincinnati influenced New York. During the same period there were many sales of the stock on the New York Curb and over the counter in New York, but petitioner, upon whom the burden rested [Crowell v. Commr., 6 Cir., 62 F.2d 51, 52, 53] did not attempt to disclose the New York sales prices for the stock on or near the basic date.

The opinions of both of petitioner's expert witnesses were that if the 14,475 shares owned by decedent had been offered for sale as a block on the Cincinnati Exchange on January 5, 1929, they could not have been sold for more than $200.00 or $210.00 per share; that it is well understood that such a large block of stock is worth less in proportion than smaller units such as were sold on the Cincinnati Exchange and that the Commissioner should have taken this fact into consideration. The Board considered this testimony and rejected it.

A similar proposition was advanced in Roth v. Wardell, 9 Cir., 77 F.2d 124 and in Richardson v. Helvering, 65 App.D.C. 105, 80 F.2d 548, 552 and was rejected.

■ The price which the stock, as a block, would have brought on the basic date was purely speculative. The conclusion was based upon an assumed state of facts. See International Harvester Co. v. Kentucky, 234 U.S. 216, 222, 34 S.Ct. 853, 58 L.Ed. 1284. In view of substantial evidence to the contrary, including the testimony of respondent's expert, the Board was not required to accept the opinions of petitioner's experts as to value. Emerald Oil Co. v. Commr., 10 Cir., 72 F.2d 681, 683; Tracy v. Commr., supra, page 577; Laird v. Commr., 3 Cir., 85 F.2d 598; Anchor Co. v. Commr., 4 Cir., 42 F.2d 99; see also Helvering v. Nat. Groc. Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346.

Neither the statute nor the regulations promulgated thereunder [Reg. 70, Articles 10, 11, 13(1) (3)] make any provision for determining the market value of stocks in a block. But the regulations do provide that where conditions of sale or ownership are such that the fair market value determined as indicated would not afford a proper basis for valuation, the Commissioner shall establish the value by considering all relevant factors.

■ As hereinbefore pointed out, the Board did consider "all relevant factors" as well as all the evidence presented by petitioner and we fail to find that the presumption of the valuation fixed by the Commissioner was refuted. It is not necessary for us to debate the question whether the term "value" as found in Sec. 302 of the statute is equivalent to the term "fair market value" found in Article 13 of Regulation 70, or whether it means real or true or intrinsic value, because, considering the testimony as did the Board, from each standpoint, there was substantial evidence to support its finding from either. The question of value being one of fact, and the decision involving purely a question of fact, we have no authority to disturb it. Old Mission Co. v. Helvering, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367; Frischkorn Dev. Co. v. Commr., 6 Cir., 88 F.2d 1009. The burden was upon petitioner to show that the determination of the Commissioner was wrong and if there was substantial evidence that it was correct upon any basis it must stand. Crowell v. Commr., supra, page 53 and Manchester Board & Paper Co. v. Commr., 4 Cir., 89 F.2d 315, 317. We think that petitioner has failed to carry the burden imposed upon it.

It is said that the Board erred when it decided that the presumption of correctness of the Commissioner's determination of value continued in the case and was determinative, but the difficulty with the proposition is that the Board made no such deci-

sion. All that it said upon the point was that "respondent's determination is presumed to be correct." The opinion contains nothing to indicate that the Board regarded the presumption as evidence to be considered throughout the case or as anything more than procedural (Manchester P. & B. Co. v. Commr., supra) which might be refuted by petitioner's evidence.

Finally, it is said that the Board made no findings of fact whatever as required by U.S.C. Title 26, Sec. 617(b), 26 U.S.C.A. § 617(b) and that the case should be remanded to it for the discharge of that duty. The opinion of the Board carried this statement, ". . . the respondent's determination of a value of $280.00 per share for the Procter & Gamble common stock as of January 5, 1929, is sustained." We think that this is the equivalent of a specific finding that the stock was worth $280.00 per share upon the basic date. Insurance & Title Guarantee Co. v. Commr., 2 Cir., 36 F.2d 842, 845; Helvering v. Nat. Groc. Co., supra, page 295, 58 S.Ct. 932. The complaint is to the form rather than to the substance of the finding.

The decision of the Board of Tax Appeals is affirmed.