## PHIPPS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2371.

Circuit Court of Appeals, Tenth Circuit.

March 23, 1942.

David A. Reed, of Pittsburgh, Pa. (Fred T. Ikeler, Thomas P. Johnson, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for petitioner.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This appeal involves the assessment of deficiency gift taxes in the amount of $21,143.90 for the year 1935. Two questions are presented for consideration: First, whether taxpayer was entitled in his return for 1935 to claim any part of the statutory exemption of $50,000.00;[1] and, Second, whether there was substantial evidence to sustain the Board's valuation placed on 10,000 shares of cumulative preferred stock of the Nevada-California Electric Corporation.

In his return for the calendar year 1932, petitioner claimed an exemption of $12,000.00 for gifts made during that year. In his return for 1933 he reported gifts aggregating $76,850.00, exclusive of gifts of Liberty Loan Bonds in the amount of $165,583.33, which he claimed were not subject to the federal gift tax. In the return he claimed a specific exemption of $11,850.00, which, together with other allowable deductions, resulted in no tax due unless the gift of Liberty Loan Bonds was subject to the gift tax. Respondent determined that Liberty Loan Bonds were subject to the gift tax. He increased the aggregate of the gifts by the amount of such bonds, and at the same time increased petitioner's exemption to $38,000.00, which, together with the $12,000.00 taken in 1932, exhausted his exemption of $50,000.00. On June 10, 1936, the Board of Tax Appeals, on petition for redetermination, sustained the Commissioner. Petitioner appealed, and this court, on August 16, 1937, affirmed the order of the Board. 91 F.2d 627.

Petitioner also filed a gift tax return for the year 1935, in which he claimed an exemption of $26,150.00. On July 20, 1936, respondent advised petitioner by letter that he had disallowed the exemption claimed in the return because in his view the entire exemption of $50,000.00 was exhausted in the 1932 and 1933 returns, and that he proposed to assess an additional tax. On August 7, 1936, petitioner filed a protest specifically excepting to the refusal to allow the asserted exemption. The protest was disallowed, the additional tax was assessed, and on application for a redetermination the Board sustained the Commissioner.

The right to claim the statutory exemption is given to the taxpayer. He may choose not only the years in which he will claim it, but also the amount he will claim each year. Neither the Commissioner nor anyone else may make this designation. Respondent concedes that the petitioner alone had the right to claim the exemption. However, in 1933 petitioner claimed an exemption which, together with other exemptions, would cancel out his gifts if he was right in his position on the Liberty Loan Bonds, so that no tax was due. This evidenced an intent on his part to claim so much of his exemption as was necessary to avoid the attachment of any tax. This was the construction respondent placed on petitioner's act, and so, when he increased the taxable gifts by the amount of the Liberty Loan Bonds, he likewise increased his claimed exemption to $38,000.00, the full remainder of the $50,000.00 exemption, and thereby reduced the amount of the tax due. At no stage of the proceedings involving the 1933 return, neither before respondent, the Board of Tax Appeals, nor in this court on appeal, did petitioner disavow the act of respondent in increasing his exemptions or challenge his right to give him credit for the balance of his exemption.

---

[1] Sec. 505 (a)(1), Revenue Act of 1932: "(1) Specific exemption. An exemption of $50,000, less the aggregate of the amounts claimed and allowed as specific exemption for preceding calendar years." 26 U.S.C.A. Int.Rev.Acts, page 586.

His sole attack was directed to the action of respondent in including Liberty Loan Bonds in taxable gifts.

The Board decided the 1933 appeal June 2, 1936. Thereafter respondent was without authority to recompute the 1933 gift tax.[2] At no time prior thereto did petitioner directly notify respondent that he claimed a part of his exemption in his 1935 return, so as to give him an opportunity to recompute the tax on the 1933 return. Nor is it contended that respondent actually had notice of the claim asserted in the 1935 tax return prior to the decision by the Board on June 2, 1936.

It is argued that although on August 7, 1936, when a written protest was lodged with respondent challenging his right to increase petitioner's exemption in the 1933 tax return, the time had expired when respondent could redetermine the 1933 tax, nevertheless a remedy to correct the 1933 return was still available. It is true, as pointed out, that an error in the 1933 tax return could have been corrected at any time before the final decision of that matter, either while the matter was pending before the Board or on appeal to this court.[3] Failure of respondent to call the attention of the Board or this court in the former case to the new issue raised by petitioner's protest on August 7 is, however, not decisive here. At no stage in the proceedings, either before the Commissioner, in the petition for review before the Board, or in the appeal before this court, did petitioner challenge the right of respondent to increase his exemption in the 1933 return, or call the attention of the Board or this court to his protest of August 7 and ask that the issue presented for the first time be decided and taken into account in considering the amount due on his 1933 return.

■ Equitable principles have application in tax problems the same as in other matters. Robinson v. Commissioner, 6 Cir., 100 F.2d 847. Equitable and just results can be obtained in the levy and collection of taxes only if both the government and the taxpayer act in good faith and assume and maintain a consistent position toward each other. In Alamo Nat. Bk. v. Commissioner, 5 Cir., 95 F.2d 622, 623, the court said:

"It is no more right to allow a party to blow hot and cold as suits his interests in tax matters than in other relationships."

If petitioner wanted to challenge the action of respondent in increasing his claimed exemption in the 1933 return, he should have done so at some stage of the proceedings in which that return was in issue. It was there that this should have been done, so that not only could the issue be determined, but the resulting equities also be adjusted. Having failed to do so, he may not challenge the action of respondent in increasing his exemption at this late hour. Wheelock v. Commissioner, 5 Cir., 77 F.2d 474. It will be presumed that he ratified the action of respondent in increasing his exemption in his 1933 return, which resulted in a lower tax to him at that time.

In 1935 petitioner made gifts of preferred stock in the Nevada-California Electric Company to thirteen persons, in the total amount of 10,000 shares. Twelve of the gifts were made to relatives and one to his secretary. They varied from 2,500 to 100 shares each, and were all made on the same day. The value placed on the stock in the return by petitioner was $50.00 per share. Respondent increased the value to $51.00 per share. In his petition for redetermination of the tax, petitioner contended that the value did not exceed $40.00 per share. This contention is bottomed largely on the so-called "blockage" theory. The reasoning on which this theory of valuation is based is that a large block of stock cannot ordinarily be marketed and turned into cash as readily as a few shares; also, that where there is only a limited market for a stock, offering a large block of the stock depresses the market and lowers the price that can be obtained for the stock. The conclusion that flows from this premise is that evidence of sales of small blocks of stock is not a criterion of the value of a large block of the same stock.

The ultimate place of the "blockage" theory in the field of valuation has not yet been finally determined. The most that the courts have said is that it is a factor to be considered along with all others in determining value in computing gift taxes under the statute. Gamble v. Commissioner, 6 Cir., 101 F.2d 565; Commissioner v. Shattuck, 7 Cir., 97 F.2d 790; Richardson v.

---

[2] Sec. 513 (f), Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 590.

[3] Section 513 (e), Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 591; Section 1003 (b), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 313.

Helvering, 65 App.D.C. 105, 80 F.2d 548; Roth v. Wardell, 9 Cir., 77 F.2d 124; Robertson v. Routzahn, Collector, 6 Cir., 75 F.2d 537.

Petitioner treated the block of stock as a single gift, while the Board held that the transaction constituted thirteen separate gifts to thirteen individuals. Petitioner offered no testimony as to the value of the thirteen blocks if they are to be treated as such. Our attention has not been directed to any case where this precise question has been either considered or decided. In Helvering v. Kimberly, 4 Cir., 97 F.2d 433, and Commissioner v. Shattuck, supra, gifts of the same stock were made by one donor on the same day to different persons. The court in each case held that the value of a large block of stock was a factor to be considered, but the decisions did not turn on whether the stock should be treated as a single block or as separate blocks to each donee.

█ There is much force in the argument advanced by respondent in support of its position on this point. It is not necessary, however, to resolve this conflict in the views of the parties, because, as we view the problem, whether the transaction be treated as a single gift or thirteen separate gifts, the decision must nevertheless be the same. In addition to the evidence of the experts, the Board received other evidence tending to show the market value of the stock in question as established in Denver, in transactions over the counter during the year 1935; the New York Curb Exchange sales from September to November, inclusive; the number of shares of stock and the prices thereof sold during the year in question; the operating earnings of the company; the surplus before dividends for the five preceding years; the operating earnings for three months in 1935 compared with corresponding months in the preceding year; the earnings on the preferred stock; the reduction of its bonded and debenture indebtedness; and the increase of the unappropriated surplus at the end of 1935 over the preceding year. The evidence established that for six years, including 1935, the preferred stock earned a 12.02 per cent return on a valuation of $51.00 per share. After giving consideration to all this evidence, including the evidence of the experts, the Board fixed the value of the stock that is now being challenged.

█ It does not appear what, if any, weight the Board ascribed to the expert testimony in reaching its ultimate conclusion. It may have rejected it entirely. But this it had a right to do. "A fact-finding body may disregard the opinion of an expert and use its own judgment in arriving at value." Emerald Oil Co. v. Commissioner, 10 Cir., 72 F.2d 681, 683; see, also, Gamble v. Commissioner, supra. It may not, however, reject opinion evidence and make an arbitrary finding of value not supported by any substantial evidence. Emerald Oil Co. v. Commissioner, supra. Here there is substantial evidence in the record which supports the valuation fixed by the Board, and it must therefore stand.

Affirmed.

PHILLIPS, Circuit Judge (dissenting).

In his gift tax return for the calendar year 1932, petitioner claimed a specific exemption of $12,000; in his gift tax return for the calendar year 1933, he claimed a specific exemption of $11,850; in his gift tax return for the calendar year 1934, he claimed no exemption; and in his gift tax return for the calendar year 1935, he claimed a specific exemption of $26,150, making an aggregate of the specific exemptions of $50,000, the amount permitted to him by virtue of § 505(a) (1) of the Revenue Act of 1932.

By a deficiency letter dated February 28, 1935, the Commissioner held that gifts made by the petitioner in 1933 of certain First Liberty Loan Bonds were taxable, and increased the amount of the gross taxable gifts in 1933 from $76,850, as reported by petitioner, to $240,433.33. In determining the deficiency in petitioner's gift tax liability for 1933, the Commissioner applied as a deduction a specific exemption of $38,000, whereas petitioner had claimed a specific exemption of only $11,850 in his return.

On March 27, 1935, petitioner filed with the Board of Tax Appeals a petition for redetermination of the deficiency for the year 1933, docket No. 78915. On June 10, 1936, the Board entered its decision finding a deficiency of $4,108.17 in petitioner's gift tax liability for 1933. The petitioner duly filed a petition to review the decision of the Board. The petition and record were filed in this court, October 22, 1936. That decision was affirmed by this court on August 16, 1937 (Phipps v. Commissioner, 10 Cir.,

91 F.2d 627, 112 A.L.R. 1441) and certiorari was denied by the Supreme Court of the United States on November 8, 1937. Phipps v. Commissioner, 302 U.S. 742, 58 S.Ct. 144, 82 L.Ed. 574. In that proceeding the only issue before the Board or the courts was the propriety of the Commissioner's action in including the gifts of the Liberty Bonds as taxable gifts.

In his gift tax return for the calendar year 1935, which was filed prior to the decision of the Board in docket No. 78915, petitioner claimed a specific exemption of $26,150 representing the balance of his $50,000 exemption not claimed by him in his returns for prior years.

On July 20, 1936, the Commissioner mailed petitioner a deficiency letter in which he proposed a deficiency in petitioner's gift tax liability for 1935 based in part on the disallowance of the $26,150 specific exemption which had been claimed by petitioner in his return. The letter set forth that the balance of petitioner's specific exemption had been applied by the Commissioner to the year 1933.

On August 7, 1936, petitioner filed with the Commissioner a protest in writing, excepting to the action of the Commissioner in refusing to allow credit for a specific exemption of $26,150 in 1935. In such protest, petitioner set forth the years in which the specific exemptions had been claimed by petitioner and stated that it was his desire to have the specific exemptions allowed in the years claimed in his returns. At the hearing before the Board in the instant matter, petitioner testified that it was still his desire to take the $26,150 exemption in the year 1935 and not in any prior year, and that he had never done or said anything inconsistent therewith.

After March 27, 1935, the date the petition to review the proposed deficiency for 1933 was filed, the Commissioner could not determine an additional deficiency for that year. § 513(f) of the Revenue Act of 1932. But under § 513(e) of the Revenue Act of 1932, the Board had jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined was greater than the amount of the deficiency, notice of which had been mailed to the petitioner, and to determine whether any additional amount or additional tax should be assessed, if claim therefor was asserted by the Commissioner at or before the hearing or a rehearing. On review, this court had jurisdiction to affirm, to modify, or to reverse the decision of the Board, with or without remanding the case for a rehearing, as justice might require. § 1003(b), Revenue Act of 1926.

Clearly, the Commissioner has no right to determine the amount of exemption a taxpayer shall take in a particular year. Under the statute and the Regulations, the exemption may be utilized in such year or years as the taxpayer may claim at his sole option.

Hence, the Commissioner exceeded his power in undertaking to assign the balance of the unclaimed exemption to the year 1933. It was the Commissioner's mistake, not the petitioner's. Petitioner was not bound by the mistake of the Commissioner unless facts and circumstances arose which estopped him from claiming the exemption in a later year. By his 1935 return and by his protest of August 7, 1936, petitioner gave notice to the Commissioner that he claimed the right to take the exemption for the year 1935. It was still within the power of the Commissioner to correct his mistake by asking this court to remand No. 78915 to the Board to permit the Commissioner to file a petition for a rehearing and assert a claim for an additional tax under § 513(e), supra.

Was it the duty of petitioner in his petition to review in No. 78915 to challenge the assignment of the exemption to the year 1933? Unless petitioner was estopped, he could not be injured by the Commissioner's mistake. Why then, should petitioner assign as error an act of the Commissioner which would not prejudice petitioner?

It is my opinion that petitioner was not estopped and that it was the duty of the Commissioner, not the petitioner, to correct the former's error.[1] That the Commissioner failed to act after due notice and permitted the right to assess the additional tax for the year 1933 to become barred is no fault of the petitioner.

To hold otherwise will deny to the petitioner his statutory right to utilize the exemption in the years he elected to make specific claims therefor, of which claims the Commissioner had ample notice. Petitioner's claim is not without substance. It

---

[1] See Central Market Street Co. v. Commissioner, 25 B.T.A. 499, 506; Newport Co. v. Commissioner, 22 B.T.A. 833, 846.

would have been to petitioner's advantage on the basis of total tax liability to have had the exemption allowed for the year 1935 rather than the year 1933.

On October 15, 1935, petitioner made gifts aggregating 10,000 shares of 7% Cumulative Preferred Stock of Nevada-California Electric Corporation[2] to 13 persons. The smallest gift to any one donee was 100 shares and the largest 2,500 shares.

At the hearing before the Board in the instant case, three brokers, after duly qualifying as experts, testified that no group or individual purchaser for a block of 10,000 shares of stock in Nevada could have been found on October 15, 1935, at the price of 51 per share. They testified that the best price obtainable for such a block of stock between a willing buyer and a willing seller on that date was between 38 and 41 per share. Each had been engaged in the security business in Denver for more than 20 years. The market for stock of Nevada was concentrated in Denver where these brokers were located. The market therein was thin and the brokers were familiar with the affairs of Nevada and the market action on the stock. One broker testified that an over-the-counter house would have purchased a block of 2,000 shares at from 5 to 6 points below the market. Another of the witnesses testified that a brokerage house would have paid from 3 to 5 points below the last sale price on October 15, 1935, for 2,000 shares of the stock. In January, 1935, the firm, with which one of the brokers was associated, purchased 1,350 shares at two points below the market. On January 3, 1935, one brokerage house bought 800 shares at 39 and sold 100 shares of this lot at 43.

The Commissioner offered the testimony of only one witness. He testified that, assuming a willing buyer and a willing seller involving 2,000 shares of Nevada stock, the price on October 15, 1935, would have been 51 per share and that the same price would have applied in case of a block of 500 shares, 10,000 shares, 100,000 shares, or all of the 104,833 shares outstanding. He further testified that a dealer purchasing the stock for resale in the amount of 2,-000 shares would pay from 3 to 5 points below the last sale; that the discount might be a little smaller if the block were as much as 10,000 shares.

The Board held that the property to be valued was not a block of 10,000 shares, but 13 separate blocks, ranging from 100 to 2,500 shares. In the course of its opinion the Board stated:

"Petitioner did not offer any evidence as to the fair market value per unit of a block of 2500 shares, or 1250 shares, or 1000 shares, or 300 shares, or 100 shares."

It found that the trading in Denver in 1935 involved at least 10,946 shares. This finding was erroneous because Joint Exhibit A-8, upon which it is based, contained many duplications. In 1935, only 6,200 shares of the stock, exclusive of the gift stock, were transferred on the books of Nevada.

Art. 19(1) and (3) of Regulations 79 provided that in the case of stocks and bonds the value at the date of the gift is the fair market value per share or bond on such date.

The decisions of the Board of Tax Appeals and of the courts have definitely established that effect must be given to the size of the block of shares under consideration where that is shown to be an element influencing value.[3] The Eighth Circuit approved this principle in the recent case of Helvering v. Maytag, 8 Cir., 125 F.2d 55.

Because of these decisions, Art. 19(1) and (3) of Regulations 79, supra, were amended by T.D. 4901, approved May 18, 1939. The Regulations as amended no longer require a valuation of large blocks of stock according to the most recent sale price of small lots.

The gifts were made on the same day as a part of the same transaction. The Board held that inasmuch as the petitioner had given a block of 10,000 shares to 13 people in varying amounts, the unit to be valued was not 10,000 shares, but each of the separate units given to the several donees. I think the unit to be valued was 10,000 shares. The underlying theory of the gift tax is that it is a transfer tax

---

[2] Hereinafter called Nevada.

[3] Safe Deposit & Trust Co. v. Commissioner, 35 B.T.A. 259; Helvering v. Safe Deposit & Trust Co., 4 Cir., 95 F.2d 806, 811, 812; Jenkins v. Smith, D.C.Conn., 21 F.Supp. 251; Wood v. United States, Ct.Cl., 29 F.Supp. 853; Commissioner v. Shattuck, 7 Cir., 97 F.2d 790; Helvering v. Kimberly, 4 Cir., 97 F.2d 433; Squier v. Commissioner, B.T.A.Memo., C.C.H. Dec.No. 10679-K (1939).

"upon the transfer during such calendar year by any individual, · * * * of property by gift." Sec. 501, Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 580. The tax is exacted from the donor and it is the donor's position which is to be inquired into in determining the tax.

Had the petitioner decided to sell on October 15, 1935, 10,000 shares of Nevada stock and had sold to 13 different persons, the effect of such sales upon the market value of the stock would have been exactly the same as if the petitioner had placed 10,000 shares upon the market for sale on the same date.

The courts and prior decisions of the Board have valued as a unit like gifts of stock in a particular corporation made on the same day to several donees.[4]

I conclude that the Board erred in not valuing the 10,000 shares as a unit, in not giving consideration to the effect of the size of the block of 10,000 shares, and in its finding as to the number of shares traded in Denver in 1935.

It is my opinion that the case should be reversed with instructions to allow the exemption and redetermine the valuation of the shares in accordance with the views above expressed.

[4] See Commissioner v. Shattuck, 7 Cir., 97 F.2d 790; Helvering v. Kimberly, 4 Cir., 97 F.2d 433; F. J. Sensenbrenner v. Commissioner, B.T.A.Memo, C.C.H. Dec.No. 9215-A (1935); Joseph Soss v. Commissioner, B.T.A.Memo., C.C.H.Dec. No. 11371-B (1940); Staley v. Commissioner, 41 B.T.A. 752.