**WEIL v. DONNELLY, Collector of Internal Revenue.**

**Civ. A. No. 3190.**

United States District Court
E. D. Louisiana, New Orleans Division.
March 27, 1953.

Monroe & Lemann, Monte M. Lemann and Nicholas Callan, New Orleans, La., for plaintiff.

John N. McKay, U. S. Atty., and Lansing L. Mitchell, Asst. U. S. Atty., New Orleans, La., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Benjamin H. Pester, Sp. Assts. to Atty. Gen., for defendant.

WRIGHT, District Judge.

The claim of petitioner is for a refund of income taxes for 1943 in the principal sum of $9,386.99 and $3,490.16 accrued interest, or a total of $12,877.15. The primary issue presented is the fair market value at the time of the foreclosure sale of certain stock pledged as collateral to unpaid notes owned by the taxpayer. The issues of fact and law

having come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, the court now makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Harold S. Weil, the taxpayer, is a resident of the City of New Orleans, Louisiana, and the defendant was the Collector of Internal Revenue for the District of Louisiana.

2. Taxpayer filed his individual income tax return for the year 1943 with the Collector of Internal Revenue for the District of Louisiana on or about March 15, 1945, reporting a tax to be due in the amount of $5,040.64. Included in the tax return was income received from notes which were secured by stock of the Allendale Land Company, a corporation. The taxpayer in his return computed the gain and loss on the notes and stock as follows:

Schedule "B"—Line 6–A

| | | |
|---|---|---|
| Sale of 1400 Shares of stock of Allendale Land Co. on December 17, 1943 | $50,000.00 | |
| Cost of 1400 Shares of stock of Allendale Land Co. on January 6, 1943 | 28,000.00 | |
| | $22,000.00 | |
| Gain to be taken into account—50% | | $11,000.00 |
| Notes of Morris Adler & Co., Birmingham, Ala. | | |
| Cost of notes | $33,529.00 | |
| Less proceeds of sale of Stock pledged as collateral, which was seized and sold at public auction January 6, 1943, at Birmingham, Ala. | 28,526.25 | |
| Net loss (as Company had no other assets to satisfy obligation) | | $ 5,001.75 |

3. Taxpayer treated all his income in his return as community, including the increment on the notes and stock, and computed the tax on one-half of the gains only, as long term capital gains, and deducted the total amount of the losses.

4. The Commissioner determined that the value of the Allendale Land Company stock on January 6, 1943, was the value received by the taxpayer for the stock in December 1943, namely, $50,000, and computed the gain to be $18,544.38 and the loss at $1,546.43.

5. The Commissioner also made other adjustments to which no exception was taken by the taxpayer but they were taken into account in determining the amount of the deficiency tax.

6. The Commissioner determined that the amount received by taxpayer was taxable as short term capital gain and not entitled to capital gain treatment under Section 117 of the Internal Revenue Code, 26 U.S. C.A. § 117, and the loss was a short term capital loss. Since the stock was sold in December, 1943, for a price equal to its value

on January 6, 1943, there was no gain or loss on the sale of the stock.

7. On May 26, 1950, taxpayer paid to the defendant herein the sum of $12,877.15, representing an additional assessment against taxpayer for income taxes for the year 1943 in the principal sum of $9,386.99, plus $3,490.16 in interest, or an aggregate of $12,877.15.

8. On July 14, 1951, taxpayer filed a claim for refund of the amount paid, setting up the grounds that the fair market value of the collateral at the date of foreclosure did not exceed the amount bid for the stock, that the foreclosure proceedings with reference to the $25,000 and the $100,000 note are to be treated as a whole, that there could be no gain until the stock was sold, that the gain could not be taxed as income, but must be taxed as long term capital gain, and that the income would have accrued to the community. The same contentions are made in this suit.

9. On December 1, 1931, taxpayer acquired by gift from his father, Herman Weil, a note of Morris Adler and Company, dated December 1, 1931, payable April 1, 1932, for $25,000, secured by 1,800 shares of DeBardeleben Coal Corporation $7 preferred stock and 600 shares of Allendale Land Company stock. This note had a cost basis to Herman Weil and to the taxpayer of $25,000. On March 9, 1936, $1,800 was paid on the principal of this note, leaving a balance due on principal of $23,200. No interest was ever paid.

10. In 1941, taxpayer acquired by inheritance from his father, Herman Weil, a one-third interest in three notes of Morris Adler and Company, dated December 1, 1931, payable April 1, 1932, in the principal sums of $50,000, $25,000, and $25,000, or an aggregate of $100,000, secured by an aggregate of 2,400 shares of stock of Allendale Land Company and 733.8 shares of DeBardeleben Coal Corporation. On March 9, 1936, these notes were reduced by principal amounts aggregating $7,200. No interest was ever paid. These notes were valued in the estate of Herman Weil for federal estate tax purposes at $30,985, and taxpayer's basis for his one-third interest was thereby fixed at $10,328.63.

11. On January 6, 1943, the collateral securing all the notes above referred to was seized and sold at public auction. In the absence of a higher bid, the taxpayer bid in all of the stock of Allendale Land Company pledged to secure the notes held by him at $20 per share, and all of the stock of DeBardeleben Coal Corporation, similarly pledged, at $1.25 per share.

12. On December 17, 1943, taxpayer sold for $50,000 the 1,400 shares of Allendale Land Company stock which he had acquired on January 6, 1943 by foreclosure.

13. The fair market value of Allendale Land Company stock on January 6, 1943 was equal to the price paid for it on that day at the foreclosure sale.

### Conclusions of Law

1. The rule of evidence which controls the basic issue between petitioner and the Collector is set forth in Regulation 111, Sec. 29.23(k)-3, as amended by T.D. 5376, June 3, 1944 (1953 P.H. 13,905), which reads in part:

"* * * The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary. If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition."

2. This Regulation requires determination of the fair market value of the Allendale stock and not its intrinsic value, which is not an equivalent of fair market value. Jenkins v. Smith, D.C., 21 F.Supp. 251; United States v. Reading Co., D.C., 295 F. 551; Korth v. Zion's Savings Bank & Trust Co., 10 Cir., 148 F.2d 170.

3. Fair market value is the price at which property changes hands in a transaction between a willing buyer not compelled to buy and a willing seller not compelled to sell. Regulation 105, Sec. 81.10 (as amended by T.D. 5351, March 27, 1944; T.D. 5906, May 27, 1952), 4(a), P.H.Par. 123,305. Stiles v. Commissioner, 5 Cir., 69 F.2d 951; French Dry Cleaning Co. v. Commissioner, 5 Cir., 72 F.2d 167; Commissioner of In-

ternal Revenue v. Swenson, 5 Cir., 56 F.2d 544; O'Malley v. Ames, 8 Cir., 197 F.2d 256; Iriarte v. United States, 1 Cir., 157 F. 2d 105, 167 A.L.R. 494; Baetjer v. United States, 1 Cir., 143 F.2d 391; Syracuse Engineering Co. v. Haight, 2 Cir., 110 F.2d 468; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569; Karlson v. United States, 8 Cir., 82 F.2d 330; Robertson v. Routzahn, 6 Cir., 75 F.2d 537; Eastern S/S Lines v. United States, D.C., 74 F.Supp. 37; United States v. 3969.59 Acres of Land, D.C., 56 F.Supp. 831; Union National Bank v. Driscoll, D.C., 32 F.Supp. 661.

■ 4. In the absence of a market established by the presence of willing buyers and willing sellers for the Allendale stock in December, 1942 and January, 1943, under Regulation 111, Sec. 25.23(k)–3 as amended by T.D. 5376, June 3, 1944 (1953 P.H. 13,905), the bid price on the foreclosure sales controls. Highland Creek Coal Company, Inc., Docket No. 97,870, CCH Decision 11,409D.

5. The purchase of the Midfield acreage by W. A. Belcher in December, 1943, is not necessarily evidence of the fair market value of the Allendale stock in December, 1942 and January, 1943. True v. United States, D.C., 51 F.Supp. 720; Williams v. Commissioner, 5 Cir., 45 F.2d 61; Korth v. Zion's Savings Bank & Trust Co., 10 Cir., 148 F.2d 170.

■ 6. Majority control of a corporation is not necessarily an element in a determination of the fair market value of its stock. Lewis v. City of Racine, 179 Wis. 210, 190 N.W. 476; In re Nieman's Estate, 230 Wis. 23, 283 N.W. 452. Moreover, majority control in December, 1943, which resulted from the public foreclosure sales in January, 1943, is not an element for the determination of the fair market value of the Allendale stock as of the date of its acquisition.

■ 7. The Collector has failed to overcome the presumption that the fair market of the Allendale stock in December, 1942 and January, 1943, was the price bid therefor at the foreclosure sales by "clear and convincing proof to the contrary." In fact the preponderance of the evidence shows

the bid price to be the fair market value of the stock, if in the circumstances of this case the stock can be said to have had a market.

8. The gains and losses to the taxpayer on foreclosure proceedings are entitled to short term capital gain and loss treatment under Section 117 of the Internal Revenue Code. Regulations 111, Sections 29.23(k)–3 and 29.23(k)–6; Helvering v. Roth, 2 Cir., 115 F.2d 239.

■ 9. The gain to the taxpayer on the sale of the Allendale Land Company stock is entitled to long term capital gain treatment under Section 117 of the Internal Revenue Code.

■ 10. The increment under Section 117 of the Internal Revenue Code to the taxpayer from the transactions in suit was not community income and is taxable to the taxpayer in its entirety. Beals v. Fontenot, 5 Cir., 111 F.2d 956; Fleming v. Commissioner, 5 Cir., 153 F.2d 361.

11. A recomputation shall be made by the parties in conformity with these findings, taking into account all adjustments made by the Commissioner to which taxpayer has taken no exception, and submitted to the Court for approval and entry of judgment.