ESTATE OF MARION CHRISTIE, Deceased, WALTER CHRISTIE, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Christie v. Commissioner
Docket No. 5464-71.
United States Tax Court
T.C. Memo 1974-95; 1974 Tax Ct. Memo LEXIS 223; 33 T.C.M. (CCH) 476; T.C.M. (RIA) 74095; April 18, 1974, Filed *223 At the time of her death decedent owned 5,854 shares of the stock of a bank, valued at $127,324.50 in the estate tax return filed by petitioner. Respondent assessed a deficiency based upon his determining the value of the bank stock at $146,350. Held: The fair market value of the block of stock in question was $134,642 on the applicable valuation date. Jerome F. Woods, for the petitioner. John P. Reis, for the respondent. HOYT
MEMORANDUM FINDINGS OF FACT AND OPINION HOYT, Judge: Respondent determined a deficiency in petitioner's *224 estate tax in the amount of $5,251.04. The sole question presented for decision is the fair market value on the applicable valuation date of certain bank stock owned by decedent at her death. FINDINGS OF FACT Some of the facts have been stipulated, and such facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, Walter Christie, a resident of Bergenfield, New Jersey, at the time the petition was filed, is the duly qualified executor of the estate of Marion Christie, deceased, who died a resident of Bergenfield on November 18, 1968. The estate tax return was filed with the district director of internal revenue at Newark, New Jersey. As permitted by the then-applicable provision of section 2032 of the Internal Revenue Code of 1954, petitioner elected to value the assets of the estate on November 18, 1969. On the date of her death decedent owned 5,854 shares of the capital stock of Citizens National Bank of Englewood, New Jersey (hereinafter sometimes referred to as Citizens or the bank). On the valuation date the estate continued to own the stock. The bank shares were accorded a value of $127,324.50 (or $21.75 per *225 share) in petitioner's estate tax return. Respondent determined the value of the shares to have been $146,350 (or $25 per share), giving rise to the asserted deficiency at issue. Citizens National Bank was chartered in 1890 in the State of New Jersey as "Citizens National Bank and Trust Company of Englewood"; its present name was adopted on January 17, 1956. Its home office is in Englewood, New Jersey, and in 1969 it had four branch offices in other parts of Bergen County. In 1968 Citizens ranked seventeenth among New Jersey banks in volume of deposits and showed a percentage gain in deposits of 81.8 percent over the preceding five years. Citizens earned $1.88 per share of common stock in 1968, an increase of 14.6 percent over 1967 earnings. During the first nine months of 1969 earnings per share rose 16.8 percent over the same period in 1968. A dividend of $1.20 per share was predicted for 1969. On the valuation date Citizens had one class of stock, 770,000 shares of which were outstanding in the hands of 1,491 shareholders. The stock was not listed on the New York Stock Exchange or the American Exchange, but was traded in the over-the-counter market, primarily by five *226 local active market-makers whose customary practice was to purchase Citizens shares for their own accounts and resell them at a profit. On the valuation date the bid and asked prices of Citizens stock quoted by one of the active market-makers were $26 and $28, respectively, but only 50 shares were sold on that date by the firm of Outwater and Wells for $27 per share. In late 1969 the stock market was in a state of consolidation, influenced strongly by the ongoing war in Southeast Asia as well as the high rate of inflation and tight money. In the six-month period preceding the valuation date the market, as evidenced by the Standard and Poors averages, had suffered a decline, from which it was not to recover until well after the valuation date. A total of 99,085 shares of Citizens stock were transferred in 1969. An undetermined number of such transfers were in connection with transactions other than arms-length sales. In a six-month period beginning October 1, 1969, three of the firms making a market in the stock (Outwater and Wells, John J. Ryan and Company, and DuPont, Glore, Forgan) reported transactions in Citizens stock aggregating 21,342 shares. The transactions reported *227 consisted of 9,950 shares purchased by the three firms for their own accounts and 11,342 shares sold to customers. During the six-month period the prices paid by the market-makers for a share of Citizens stock ranged from $24.50 to $29. Prices paid the firms by customers ranged from $25 to $29.50 per share. Almost all of the sales were of a small number of shares and none even approached the size of the block owned by the Christie Estate. In his statutory notice of deficiency respondent determined that the fair market value of the Citizens stock was $25 per share on the valuation date; petitioner's estate tax liability was commensurately increased. ULTIMATE FINDING OF FACT The entire block of 5,854 shares of Citizens stock could have been disposed of by the estate for $23 per share over a reasonable period of time following the valuation date; no greater amount could have been realized from a sale of this stock during such period. OPINION The only question presented for adjudication is the estate tax value on November 18, 1969, the alternate valuation date, of the stock of Citizens National Bank owned by the estate. *228 This is solely a question of fact and petitioner bears the burden of proof. Rule 142, Tax Court Rules of Practice and Procedure.
Section 2031(a)[1] requires that the value of all property owned by a decedent at his death be included in his gross estate. The relevant standard of valuation is fair market value, defined by respondent as "* * * the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Section 20.2031-1(b), Estate Tax Regs. Petitioner's position is that the introduction of 5,854 shares of Citizens stock into a thin and depressed market would have further depressed the market price of the stock in the period following the valuation date so as to render it impossible for the estate to net more than $20 per share [2] on the sale. This argument is based on the theory of blockage, recognized by respondent in his regulations, which allow valuation of large blocks of stock in accordance with the price available *229 from sources outside the usual market in cases where the "* * * block of stock to be valued in so large in relation to the actual sales on the existing market that it could not be liquidated in a reasonable time without depressing the market * * *." Section 20.2031-2(e), Estate Tax Regs. Respondent agrees that a blockage discount is proper, but contends that the stock could have been disposed of within a reasonable time at a price of $25 per share, $2 per share less than the per-share price obtained for 50 shares of Citizens stock in the only reported sale of the stock on the valuation date. Respondent relies on the long-established rule that, *230 where there is a market for stocks, sales on and around the valuation date are the best evidence of fair market value. Section 20.2031-2(b), Estate Tax Regs.; Rogers v. Helvering, 107 F.2d 394 (C.A. 2, 1939), affirming 31 B.T.A. 994 (1935); Estate of Robert Hosken Damon, 49 T.C. 108 (1967). The same rule is applicable in any case where the prevailing market price may be realized within a reasonable time by skillful brokers following prudent liquidation practices. Mott v. Commissioner, 139 F.2d 317 (C.A. 6, 1943), affirming a Memorandum Opinion of this Court.
Blockage is not a rule of law, but a question of fact. If the price obtainable for a block of stock is influenced by the size of the block, the existence and extent of this influence must be proven. Safe Deposit & Trust Co. of Baltimore, Executor, 35 B.T.A. 259-263 (1937), affd. 95 F.2d 806 (C.A. 4, 1938); Estate of Robert Hosken Damon, supra at 117. The existence of a blockage factor in the instant situation has been conceded by respondent; on brief and in his notice of deficiency, he valued the Citizens stock at a figure below the price *231 realized from the sale of a small number of shares on the valuation date. Hence our task is to determine whether petitioner has proven respondent's determination as to the extent of the blockage influence to have been in error, and, if so, to make our own determination of the fair market value of the petitioner's block of Citizens shares on the applicable date. The parties jointly rely on the trading records of three active dealers in Citizens stock for a six-month period beginning October 1, 1969. No figures are available to suggest the volume of trading by two other firms said by petitioner to market the stock, and the records of DuPoint, Glore, Forgan, one of the three firms for which records were available, covered only the first half of the six-month period. Further there was no evidence suggesting the number of private sales occurring during the period. [3]
The trading records *232 submitted show that in the six-month period three of the five active market-makers in the stock sold 11,342 shares of Citizens stock, mostly in small lots. There were no reported sales of large blocks of Citizens shares until January of 1970 when there were two sales involving fairly large numbers of shares (1,651 shares by Outwater and Wells and 800 shares by John J. Ryan and Company). Neither of these sales had a deleterious effect on the market for Citizens stock, but there was some evidence that both sales were in response to abnormal demand for the stock from sources outside its usual market. During the period for which records exist there was no sale of a block of Citizens stock even remotely approximating the size of the block involved herein. The valuation of lightly traded stock is always difficult, as demonstrated by the inevitable conflicts of opinion among qualified and honest experts, and the result is by its very nature imprecise. After careful consideration of this case, weighing the testimony of the experts and those factors relied on in similar situations by this Court and others, we have concluded that the blockage discount allowed by respondent does not adequately *233 reflect the depressant effect which would have resulted from the introduction of the number of shares of Citizens stock involved here into an obviously "thin" market. We find and hold that, on the evidence before us, the stock could have been disposed of within a reasonable period following the valuation date for no more than $23 per share. In reaching this figure we note that the stock involved would have represented an increase in the reported volume of sales by the market-makers for the six-month period following the valuation date of approximately 50 percent. Moreover, while respondent's expert was broadly qualified in the valuation of securities, petitioner's expert was more familiar with the stock in question, the limited market within which it was traded, and the stock of similar companies in the same area. The opinion of respondent's expert who testified at trial as to the value of the Citizens stock coincided exactly with the value determined by the Commissioner and the opinion of the revenue agent who conducted the examination prior to issuance of the statutory notice. The revenue agent did not testify at trial. Finally, petitioner suggests that the stock be valued *234 by deducting from the market price on the valuation date a figure representing the arithmetical average of discounts allowed by this Court in selected previous blockage cases. The suggestion is too simplistic to require detailed comment. Each case must be decided on its own merits, by reference to the amount of stock to be disposed of, the number of shares outstanding, the activity of the market for the stock and such other factors as may be relevant in the particular case. A method of valuation which neglects these highly individual factors is obviously unsuited to the task. As our findings reflect we have concluded on the entire record before us that petitioner has established that the Citizens Bank stock owned by decedent at her death had a fair market value on the applicable date of $23 per share, a total of $134,642. To reflect necessary adjustments required by our findings and conclusions, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended. ↩
2. The Citizens stock was returned for the estate tax at a value of $21.75 per share, and petitioner's expert witness testified that the fair market value of the stock based on a capitalization of earnings was $22 to $24 per share and that, under favorable conditions, $22 per share could be realized from its sale. However, on brief petitioner requests a valuation of $20 per share to discount the value further because of a possibility of an unfavorable market and delay in realization. ↩
3. The bank's records, the contents of which were testified to by a bank officer, show the transfer of 99,085 shares of Citizens stock in 1969. No evidence was introduced to suggest what portion of these transfers were arms-length sales and what portion were gifts or other non-sale transfers. ↩