WILLAMETTE INDUSTRIES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent *
Willamette Indus. v. Commissioner
Docket Nos. 275-84, 38880-84, 10578-86
United States Tax Court
T.C. Memo 1995-150; 1995 Tax Ct. Memo LEXIS 139; 69 T.C.M. (CCH) 2319; April 4, 1995, Filed *139 In Willamette Industries, Inc. v. Commissioner, T.C. Memo. 1992-407, the Court established the methodology to be used to compute the fair market value of timber cut by P based on a detailed consideration of the expert testimony. The Court directed the parties to calculate the fair market value of the timber under Rule 155, Tax Court Rules of Practice and Procedure, pursuant to that opinion. The Rule 155 computation produced values for the timber that were lower than the lowest of those used by any of the parties' experts for 2 of the 3 years at issue. On June 1, 1994, the parties filed a Memorandum of Understanding that, by June 20, 1994, they would raise all issues in dispute concerning the Rule 155 computation. On June 24, 1994, the parties filed a stipulation that the issues respecting the Rule 155 computation had been settled. On Sept. 26, 1994, P moved to adjust the values of the timber so they are no lower than the lowest value used by any of the experts. Held, P's motion to limit valuation adjustments will be denied because the timber values calculated under Rule 155 are supported by the record. Held, further, P's motion *140 to limit valuation adjustments is untimely because it violates a binding stipulation of the parties, and no manifest injustice will result if we enforce the parties' stipulation. Rule 91(e), Tax Court Rules of Practice and Procedure.
For petitioner: Charles P. Duffy and Philip N. Jones. For respondent: Brenda M. Fitzgerald and Randall E. Heath. COLVIN
COLVIN
SUPPLEMENTAL MEMORANDUM OPINION COLVIN, Judge: This matter is before the Court on petitioner's motion to limit valuation adjustments. The opinion in this case, Willamette Industries, Inc. v. Commissioner, [1]T.C. Memo. 1992-407, was filed July 16, 1992.[2] In that opinion, this Court established the methodology to be used by the parties to compute the fair market value as of the first day of 1978, 1979, and 1980, of certain timber cut by petitioner and its subsidiaries. The Court's opinion was based on a detailed consideration of the expert testimony. The Court directed the parties to calculate the fair market value of the timber under Rule 155[3] pursuant to that opinion. Petitioner points out that the valuation for certain of the timber for 1978 and 1980 that results from applying the *141 Court's methodology is lower, i.e., more favorable for respondent, than the value assigned to it by respondent's expert witness. *142 The issues we must decide are: (1) Whether timber values calculated according to the Court's opinion in T.C. Memo. 1992-407 are supported by the record. We hold that they are. (2) Whether petitioner's motion to limit valuation adjustments, filed September 26, 1994, as supplemented on October 17, 1994, is untimely because it violates a written agreement made by the parties and provided to the Court to raise all disputed issues by June 20, 1994. We hold that it is. Respondent prevails if the answer to either of these questions is in the affirmative. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Background
At the trial of the timber valuation issue, three foresters submitted written expert reports and testified for petitioner regarding the value of the Oregon timber. One of the experts was petitioner's chief appraisal forester (Marsh). The other two were independent consulting foresters (Sharrer and Granvall). Respondent's expert was the independent firm Natural Resources Management (NRM), which also prepared a written expert report. *143 The experts' reports discussed several different aspects of the methodology which they applied to estimate the value of the Oregon timber. For example, the experts considered the effects of discounting, time trending, the export factor, U.S. Forest Service purchaser road credits, Oregon severance taxes, logging costs, and Avery timber sales. The Court considered several specific aspects of the methodology used by each expert, and considered in detail which were to be used to calculate the value of the Oregon timber. For example, we found that Sharrer's report was the best data base of comparable sales. We directed the parties to use Sharrer's data base of comparable sales and to modify it as described in the opinion. The values used by the experts and those calculated under Rule 155 are as follows: Respondent's
Petitioner's Experts
Expert
Year
Sharrer Marsh Granvall
NRM Rule 155
1978
$ 66,300,541
$ 66,856,575
$ 68,115,959
$ 65,473,643
$ 60,995,398
1979
91,072,736
91,970,825
99,893,676
77,552,162
82,778,263
1980
94,288,717
97,385,778
96,496,158
89,960,333
82,561,615
In accordance with Rule 155, the parties filed a Stipulation *144 as to Calculation of Oregon and Southern Timber Values on June 24 and September 29, 1994. Discussion
1. Whether the Court's Opinion Is Supported by the Record
Petitioner argues that the Court's opinion is not supported by the record because the section 631(a) values computed under Rule 155 are outside the range of the expert testimony. In particular, values for the Oregon timber are lower than the lowest value estimated by the experts who testified at trial. Petitioner argues that the timber values for 1978 and 1980 should be adjusted so that they are no lower than the lowest value used by any of the experts. Petitioner contends that the Court intended that the section 631 values should not be higher than the highest opinion or lower than the lowest opinion of any of the experts. We are not bound by the opinion of any expert witness, and we may accept or reject expert testimony when, in our best judgment and based on the record, it is appropriate to do so. Helvering v. National Grocery Co., 304 U.S. 282 (1938); Tripp v. Commissioner, 337 F.2d 432 (7th Cir. 1964), affg. a Memorandum Opinion of this Court; *145 Kreis' Estate v. Commissioner, 227 F.2d 753, 755 (6th Cir. 1955), affg. T.C. Memo. 1954-139; Buffalo Tool & Die Manufacturing Co. v. Commissioner, 74 T.C. 441, 452 (1980). We may find one expert more persuasive on one element of valuation and another more persuasive on another element. Parker v. Commissioner, 86 T.C. 547, 562 (1986). The parties rely on two different lines of cases. Respondent points out that a value decided by a trial court which is outside the range of expert opinion will be upheld if the value is supported by other substantial evidence in the record. Branning v. United States, 784 F.2d 361, 364 (Fed. Cir. 1986); United States v. 9.20 Acres of Land, 638 F.2d 1123, 1126 (8th Cir. 1981); United States v. 38.60 Acres of Land, 625 F.2d 196, 201 n.9 (8th Cir. 1980); United States v. 1,162.65 Acres of Land, 498 F.2d 1298, 1301 n.5 (8th Cir. 1974). Petitioner points out that a trial court may not reject well-qualified expert *146 testimony as to valuation unless: (a) There is a substantial basis in the record for the opinion of the trial court, or (b) the trial court has substantial knowledge and experience related to the subject of the valuation. Cullers v. Commissioner, 237 F.2d 611 (8th Cir. 1956), revg. T.C. Memo. 1955-228; Phipps v. Commissioner, 127 F.2d 214 (10th Cir. 1942), affg. 34 B.T.A. 641 (1936); Belridge Oil Co. v. Commissioner, 85 F.2d 762 (9th Cir. 1936), revg. 26 B.T.A. 810 (1932); Bonwit Teller v. Commissioner, 53 F.2d 381 (2d Cir. 1931), revg. and remanding 17 B.T.A. 1019 (1929); Pittsburgh Hotels Co. v. Commissioner, 43 F.2d 345 (3d Cir. 1930), revg. 15 B.T.A. 587 (1929); Boggs & Buhl v. Commissioner, 34 F.2d 859, 861 (3d Cir. 1929), modifying and affg. 11 B.T.A. 612 (1928); DeFord v. Commissioner, 29 F.2d 532, 533 (1st Cir. 1928), *147 affg. 7 B.T.A. 630 (1927). Petitioner cites Bonwit Teller v. Commissioner, supra at 383, which held that there must be a sufficient basis in the record for the value adopted.[4] Petitioner also cites Belridge Oil Co. v. Commissioner, 85 F.2d 762 (9th Cir. 1936). In that case, the Court of Appeals for the Ninth Circuit, to which this case is appealable, reversed an order of the Board of Tax Appeals that was contrary to the expert testimony where the Board was not shown to have independent knowledge or experience with the subject property. Similarly, in Cullers v. Commissioner, supra at 616, the Court of Appeals for the Eighth Circuit reversed an opinion of the Tax Court that rejected the taxpayer's expert testimony and reached a value not supported by the record, without any indication that the trial judge had knowledge or experience relative to the subject matter.
*148 Petitioner's reliance on these cases is misplaced. In Bonwit Teller, Belridge Oil, and Cullers, the Courts of Appeals held that there was no evidence supporting the trial court's valuations, the testimony of the taxpayers' experts was unimpeached, and there was no other expert testimony in the record. Bonwit Teller v. Commissioner, supra at 382-383; Belridge Oil Co. v. Commissioner, supra at 768; Cullers v. Commissioner, supra at 616-617. The analysis of the Court in the instant cases was based entirely on the record. The Court considered the testimony of all of the experts called by the parties, and selected various elements of the methodology used by each of them to use in making the Rule 155 computation. The parties do not dispute that the Court chose between various aspects of the methodologies applied by the experts whose opinions appeared in the record. Respondent argues from this that the Court properly based its conclusions on the record. To petitioner, the fact that the Court chose from the methodologies used by the experts shows that the Court did *149 not intend the opinion to produce a value outside the range of those expert opinions, and that a value outside the range of expert opinion is not supported by the record. The opinion in the instant cases was not arbitrary, and all of the Court's findings are clearly supported by the record. We carefully examined the experts' reports and adopted those portions of the testimony of each of the experts that we found proper. The Rule 155 values are based entirely on the record and reflect our best judgment. [5] See Branning v. United States, supra at 364 (where the totality of the evidence supports an award, it will be upheld even if it is contrary to and outside the range of the experts' values); United States v. 9.20 Acres of Land, supra at 1126; United States v. 1,162.65 Acres of Land, supra at 1301 n.5. *150 The experts and the parties in their briefs separately considered each of several steps in the valuation methodology. That is also how the Court decided this issue. Petitioner does not contend that it was unreasonable for our opinion to be based on the valuation methodology rather than on total value. Petitioner points out that respondent has cited no cases where a court reached a result outside the range of expert opinion without stating its intent and reasons for doing so. Petitioner argues that the fact that the Court did not state that it was reaching a value outside the range of the experts' values suggests that the Court did not intend that to occur. We disagree. The Court properly considered the record and conflicting expert opinions in painstaking detail rather than looking merely at their conclusions. Petitioner asks that we adopt respondent's expert's valuation as the value of Oregon timber for 1978 and 1980. However, our prior opinion, which is based on the record, leads to a different conclusion. If we were to grant petitioner's request, the conclusion would then be inconsistent with the methodology we adopted after carefully considering the record. Sec. 7459(b); *151 Sochin v. Commissioner, 843 F.2d 351, 354 (9th Cir. 1988), affg. Brown v. Commissioner, 85 T.C. 968 (1985); Handeland v. Commissioner, 519 F.2d 327, 329 (9th Cir. 1975). Petitioner's motion suggests no flaw in our reasoning in that opinion. Petitioner has had the opinion for more than 2 years, and has not asked us to reconsider the opinion. We find ample justification for our conclusions in that opinion. 2. Whether Petitioner's Motion Was Untimely
We also consider whether petitioner's motion was untimely. The parties filed a Memorandum of Understanding, dated June 1, 1994, in which the parties agreed that, by June 20, 1994, they were to identify "all areas of dispute with respect to those [Rule 155] calculations, and file with the Court memoranda concerning their respective positions with respect to all identified issues in dispute." On June 24, 1994, the parties filed a Stipulation as to Calculation of Oregon and Southern Timber Values. It states: "This stipulation resolves all areas of dispute or issues to this date with respect to the timber fair market value calculations. *152 The resolution of these areas of dispute constitutes a settlement of the issues with respect to the Rule 155 computation". Petitioner filed the instant motion to limit valuation adjustments on September 26, 1994. Petitioner asserts that it should be excused from meeting the June 20 deadline because: (1) The motion would have been "premature" before the parties filed the stipulation of values, and (2) filing the motion earlier would have curtailed negotiations between the parties. Petitioner points out that respondent attempted to withdraw the signed stipulation after learning of petitioner's motion to limit valuation adjustments, but ultimately filed the stipulation as signed. Respondent contends that, on February 11, 1994, respondent sent computations to petitioner that showed that the values computed pursuant to the Court's opinion would be lower than NRM's values for 1978 and 1980. Petitioner does not deny that respondent sent the information as respondent contends, but contends only that the exact computation was not made until September 1994. Courts have the inherent authority to enforce agreements between the parties as they deem necessary and prudent to achieve the orderly *153 and expeditious disposition of cases in their jurisdiction. Rule 91(e); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-765 (1980). The parties stipulated on June 24, 1994, that they had settled the issues in dispute with respect to the Rule 155 computation. This was consistent with their prior Memorandum of Understanding that all areas of dispute regarding those calculations were to be identified by June 20, 1994. The stipulation process has broad scope, and is not confined to the stipulation of facts or evidence. Explanatory note to Rule 91(a), 60 T.C. 1118. Our Rules provide that stipulations between the parties are binding, and may not be changed unless "justice requires." Rule 91(e). We will enforce such stipulations "unless manifest injustice would result." Bokum v. Commissioner, 992 F.2d 1132, 1135-1136 (11th Cir. 1993), affg. 94 T.C. 126 (1990); Bail Bonds by Marvin Nelson, Inc. v. Commissioner, 820 F.2d 1543, 1547 (9th Cir. 1987), affg. T.C. Memo. 1986-23; Jeffries v. United States, 477 F.2d 52, 55 (9th Cir. 1973). *154 Petitioner has not shown that manifest injustice will result if we enforce the stipulated deadline. We find unpersuasive petitioner's claim that meeting the deadline agreed by the parties to raise issues would have been "premature" or curtailed negotiations. Petitioner's motion, in substance, asks the Court to reconsider its valuation opinion. A motion to reconsider shall be filed within 30 days of the date of the opinion unless the Court permits otherwise. Rule 161. The valuation opinion was filed in 1992, and so the 30 days have long expired. During those 2 years petitioner did not make any motion for us to reconsider our opinion. Petitioner did not act within 30 days after receiving computations on February 11, 1994, that showed the values computed pursuant to the Court's opinion would be lower than the NRM values for 1978 and 1980. Petitioner did not act by June 20, 1994, which was the date by which it agreed to raise any remaining issues. Accordingly, we hold that petitioner's motion is untimely, and in any event, lacks merit. To reflect the foregoing, An appropriate order *155 will be issued. Footnotes
*. This is a supplement to our opinion in Willamette Industries, Inc. v. Commissioner↩, T.C. Memo. 1992-407.
1. Trial in the underlying case was conducted by former Special Trial Judge Vandervort. The opinion was written by Special Trial Judge Powell and adopted by Judge Drennen. Judge Drennen is now retired. On May 23, 1994, docket Nos. 275-84, 38880-84, and 10578-86, previously assigned to Special Trial Judge Powell, and docket Nos. 31808-88 and 22543-90 were reassigned to Judge Colvin, to whom petitioner's other pending case (docket No. 24673-92) had been previously assigned, so that all of petitioner's pending cases could be managed by one judicial officer.↩
2. Another opinion relating to these docket numbers was filed on May 23, 1989. See Willamette Industries, Inc. v. Commissioner, 92 T.C. 1116↩ (1989).
3. Rule 155 is the mechanism which enables the Court to enter a decision for the dollar amounts of deficiencies in cases in which those amounts cannot readily be decided. Cloes v. Commissioner, 79 T.C. 933, 935↩ (1982).
4. See also Phipps v. Commissioner, 127 F.2d 214, 217 (10th Cir. 1942) (fact finder may not reject opinion evidence and make an arbitrary finding of value not supported by any substantial evidence), affg. 34 B.T.A. 641↩ (1936).
5. Ferrari v. Commissioner, T.C. Memo. 1989-521, affd. without published opinion 931 F.2d 54↩ (4th Cir. 1991).