T.C. Memo. 2013-263

UNITED STATES TAX COURT

ESTATE OF DIANE TANENBLATT, DECEASED, ROY L. GREENBAUM,
PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26176-10.                    Filed November 18, 2013.

        This is an estate tax valuation case in which R has increased
the value of an interest in an LLC included in the value of the gross
estate.  The parties have stipulated copies of the pleadings.  In the
petition, P avers that he has obtained a new appraisal, "a copy of
which" is attached to the petition.  R admits only that a new appraisal
is attached to the petition.  P argues that the appraisal was admitted in
evidence by stipulation and must be considered by us as expert
testimony notwithstanding P's failure to qualify the author of the
appraisal as an expert pursuant to Fed. R. Evid. 702 or to satisfy Rule
143(g), Tax Court Rules of Practice and Procedure, addressing expert
witness reports, and the provisions of our standing pretrial order
addressing expert testimony.

        <u>Held</u>:  We exclude the appraisal from evidence for failure of P
to satisfy the preconditions to our receiving expert testimony.

**[\*2]**    <u>Held</u>, <u>further</u>, the value of the interest in the LLC is determined.

<u>William Jay Palmer</u> and <u>Peter A. Lagonowicz</u>, for petitioner.

<u>Brian A. Pfeifer</u> and <u>William Lee Blagg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency (notice), respondent determined a deficiency of $309,547 in Federal estate tax.  The only issue for decision is the fair market value of a 16.667% interest (subject interest) in a New York limited liability company, 37-41 East 18th Street Realty Co., LLC (LLC), included in the value of Diane Tanenblatt's (decedent's) gross estate.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner bears the burden of proof.

[*3]                                FINDINGS OF FACT

Background

Decedent died testate on February 23, 2007 (date of death). When he filed the petition, petitioner resided in Pennsylvania.

Estate Tax Return

Petitioner timely filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, electing thereon alternate valuation as provided for in section 2032. Schedule G, Transfers During Decedent's Life, attached to the Form 706, includes the subject interest, reporting the interest to be worth $1,788,000 both on the date of decedent's death and on August 23, 2007, the alternate valuation date (valuation date). Petitioner described the subject interest on Schedule G as a "16.67 PER CENT MEMBERSHIP INTEREST IN [the LLC]". Petitioner included the subject interest on Schedule G because decedent had before her death transferred the subject interest in trust to herself, as trustee (trust), retaining the power to revoke that transfer, which power she possessed at her death.

Petitioner determined the $1,788,000 that he reported on the Schedule G as the value of the subject interest from an appraisal prepared for him by Management Planning, Inc. (MPI appraisal). The MPI appraisal was based in part

[*4] on an appraisal of the LLC's principal asset, a commercial building at 37-41 East 18th Street, New York, New York (building), prepared by individuals at Jacques O. Tuchler & Associates (building appraisal).  To determine the value of the building, the building appraisal took two approaches:  a sales comparison approach, which indicated a value for the building of $22,800,000, and an income capitalization approach, which indicated a value for the building of $19,960,000.  Assigning no weight to the sales comparison approach, the building appraisal concluded on the basis of the income approach that the value of the building on the date of death was $19,960,000.  The MPI appraisal added to the value conclusion of the building appraisal the amount of the LLC's cash and other current assets ($851,337), subtracted the LLC's liabilities ($183,116), and concluded that the value (net asset value) of the LLC on the date of death was $20,628,221.  The MPI appraisal then applied to that net asset value, sequentially, discounts of 20% for lack of control and of 35% for lack of marketability, to reach a value conclusion of $1,788,000 for the fair market value of the subject interest.

Examination

Respondent examined the Form 706 and determined that petitioner had underreported the fair market value of the subject interest.  Respondent's explanation of his adjustment increasing the reported fair market value of the

[*5] subject interest shows that he accepted MPI's calculation of the net asset value of the LLC ($20,628,221) as a starting point for determining the value of the interest, but, rather than allowing 20% and 35% discounts for lack of control and lack of marketability, respectively, he allowed discounts of only 10% and 20%. On the basis of those 10% and 20% discounts, he determined that the fair market value of the subject interest on the valuation date was $2,475,882, rather than $1,788,000, as reported by petitioner, which increased the taxable estate by $687,882. On the basis of that increase, respondent determined the aforesaid deficiency in estate tax of $309,547.

Petition

Petitioner timely petitioned for redetermination of the deficiency, assigning error to the notice, averring on the basis of an appraisal by Dr. Laura J. Tindall (Tindall appraisal) that the true value of the subject interest for estate tax purposes was $1,037,796, and praying that we redetermine a deficiency of zero and an overpayment of estate tax entitling him to a refund. Petitioner attached a copy of the Tindall appraisal to the petition.

Pertinent Facts With Respect to the Building and the LLC

The building is a 10-story mezzanine, cellar and subcellar, concrete/steel/ masonry, semi-fireproof class C elevator loft building with office space and grade

**[\*6]** level retail located in the Midtown South/Ladies Mile sector of Manhattan. The building has a gross building area of approximately 67,050 square feet above grade and a gross rentable area of 77,725 square feet. The building was fully leased on the valuation date.

An operating agreement (operating agreement) governs operation of the LLC. The term "member" is defined in the operating agreement as one who has signed the operating agreement or who, thereafter, becomes a party to the agreement. Members participate in management and control of the LLC. The term "membership interest" is defined as the member's percentage interest in the LLC's capital. Membership of the LLC is divided among three family groups, and transfers of membership interests outside of those groups are restricted. A nonfamily member transferee cannot become a member of the LLC without the unanimous approval of all of the members. A nonfamily member transferee who receives a membership interest but who does not become a member is entitled to receive the distributions and allocations of profits and losses appurtenant to that membership interest but has no right to participate in management and control of the LLC. The death of a member dissolves the LLC unless it is continued by majority vote.

**[*7]**   Petitioner was a member of one of the family groups when she transferred the subject interest to the trust.  She was not a member of the LLC on the date of death.  On the date of death, the trust was a member of the LLC, and it owned the subject interest.  Following decedent's death, the trust continued to own the subject interest.

Testimony With Respect to Value

At trial, respondent offered John A. Thomson as an expert in business valuation.  Mr. Thomson is vice president and managing director of the Long Beach, California, office of Klaris, Thomson & Schroeder, Inc.  He is also an accredited senior appraiser of the American Society of Appraisers, is a member of the Appraisal Institute, and has directed and conducted numerous valuation appraisals of various business enterprises.  The Court accepted Mr. Thomson as a business valuation expert and received his written report into evidence as his direct testimony as to the value of the subject interest.

Mr. Thomson valued the subject interest as of the valuation date.  Because he considered the LLC to function primarily as a real estate holding company, he excluded the market and income approaches to valuation, and he relied exclusively on a cost approach; i.e., what he described as "the discounted net asset value approach."  He described that approach as follows:

**[*8]** As applied to the valuation of a nonmarketable, minority equity interest, the cost approach calls for a summation of the fair market value of the entity's assets and a reduction of that aggregate by the entity's total liabilities, with the resulting value then being multiplied by the subject ownership percentage to arrive at the net asset value (NAV) of the interest. To arrive at the estimated fair market value of the interest[,] the indicated net asset value is reduced by appropriate valuation discounts.

Mr. Thomson accepted $20,628,221 as the LLC's net asset value, on the basis of LLC's 2006 partnership tax return and the building appraisal. He determined that discounts of 10% and 26% for lack of control and lack of marketability, respectively, were appropriate. Applying these discounts to the subject interest, Mr. Thomson concluded that the rounded fair market value was $2,303,000.

OPINION

I.     Introduction

As stated supra, the only issue we must decide is the fair market value of the subject interest on the valuation date. Respondent initially determined that the fair market value of the subject interest on the valuation date was $2,475,882, but, now, on the basis of Mr. Thomson's expert testimony, he concedes (and we accept) that the fair market value of the subject interest on the valuation date was no greater than $2,303,000. Petitioner argues that the fair market value of the subject interest on the valuation date was less; indeed, not greater than the $1,037,796

**[*9]** determined in the Tindall appraisal. We conclude that on the valuation date, the fair market value of the subject interest was $2,303,000, and we redetermine the deficiency accordingly.

II.    Evidentiary Issues

A.    Introduction

Before proceeding to the merits of the case, we must dispose of an evidentiary issue raised by petitioner, viz, whether the Tindall appraisal is in evidence. We conclude that it is not.

B.    Background

Among petitioner's averments in the petition, in support of his claim that, on the Form 706, he overvalued the subject interest (and is entitled to a refund of tax), is the following (averment):

> The Petitioner's initial appraiser in this case also failed to utilize the proper method of valuation and failed to properly classify the Interest. Consequently, Petitioner has obtained a new appraisal (the "Appraisal"), a copy of which is attached hereto as Exhibit "B," which properly characterizes the Interest as an assignee interest, gives the proper weight to both the income approach and the net asset value approach, and applies the appropriate applicable discounts.

Respondent answered the averment: "Admits that a new appraisal is attached to the petition as Exhibit B. Denies for lack of sufficient information that Petitioner obtained the new appraisal that is attached to the petition. Denies the remaining

**[*10]** allegations."  The new appraisal that the parties are referring to is what we have styled (and shall continue to refer to) as the Tindall appraisal.

Before trial, petitioner untimely moved to compel respondent to stipulate either the Tindall appraisal or, alternatively, the entire petition (including the attached Tindall appraisal).  Petitioner alternatively moved to sanction respondent for failing to so stipulate.  We denied petitioner's pretrial motions and proceeded to hold trial.  The parties have stipulated copies of the petition and the answer, which are attachments to the stipulation, and have stipulated separately the text of the averment.  They did so subject to the caveat that the stipulations "show the parties' pleadings in this case and are not admitted in evidence."  Petitioner asks that we reconsider our prior rulings with respect to the Tindall appraisal or otherwise allow it into evidence and consider it expert testimony.

Petitioner's path for attempting to introduce the Tindall appraisal into evidence as expert testimony is, to say the least, unusual.  Generally, a party obtains the testimony of an expert witness by calling that witness to testify.  See Rule 143(g)(1).  Pursuant to that Rule, the expert witness must prepare a written report, which is marked as an exhibit and, after having been identified by the witness and adopted by him, received into evidence as his direct testimony unless the Court determines that the witness is not qualified as an expert.  The Rule

**[*11]** further provides that, not less than 30 days before the call of the trial calendar on which a case appears, a party calling an expert witness shall serve on each other party and submit to the Court a copy of the expert's report. Finally, the Rule also provides that, generally, we will exclude an expert witness' testimony altogether for failure to comply with the Rule. Those requirements are echoed in our standing pretrial order, which was served on petitioner.

Petitioner's chosen means for seeking to introduce the Tindall appraisal into evidence is perhaps explained by a conversation we had with his counsel at the hearing during which we considered petitioner's pretrial motions along with respondent's motion in limine to exclude the Tindall appraisal on various grounds, including that petitioner had not submitted and served a copy of the report as required by Rule 143(g)(1) and our standing pretrial order. Petitioner had filed no response to respondent's motion in limine, and, at the hearing, in response to the Court's question as to whether petitioner was just relying on his own motions (with respect to stipulating the Tindall appraisal into evidence), petitioner's counsel candidly responded: "Probably. Your honor, because right now my client's in a fee dispute with the appraiser, so right now I cannot get the appraiser to come in and testify." Apparently, counsel's time is less dear than was Dr. Tindall's.

**[*12]** C.    Discussion

1.    Tax Court Rules

The Tax Court Rules of Practice and Procedure govern all proceedings and cases before the Court.  See Rule 2(a).  Pleadings are governed by Rules 30 through 41; stipulations for trial are governed by Rule 91, and evidentiary matters are addressed by Rule 143.  In general, the Court conducts trials in accordance with the rules of evidence for trials without a jury in the U.S. District Court for the District of Columbia, and, accordingly, we follow the Federal Rules of Evidence.  Sec. 7453; Rule 143(a); Clough v. Commissioner, 119 T.C. 183, 188 (2002).

In pertinent part, Rule 143(c) provides:  "Ex parte affidavits or declarations, statements in briefs, and unadmitted allegations in pleadings do not constitute evidence."  (Emphasis added.)  In answering the averment, respondent admitted only that a new appraisal (the Tindall appraisal) was attached to the petition.  He denied the claims that petitioner's initial appraiser erred, that petitioner obtained a new appraisal, and that the new appraisal properly characterized the subject interest and otherwise properly valued it.

Rule 91(a)(1) provides:

The parties are required to stipulate, to the fullest extent to which complete or qualified agreement can or fairly should be reached, all matters not privileged which are relevant to the pending case,

**[*13]** regardless of whether such matters involve fact or opinion or the application of law to fact.  Included in matters required to be stipulated are all facts, all documents and papers or contents or aspects thereof, and all evidence which fairly should not be in dispute.  * * *  Documents or papers or other exhibits annexed to or filed with the stipulation shall be considered to be part of the stipulation.

Rule 91(c) governs the filing of stipulations, and it provides:  "Executed stipulations prepared pursuant to this Rule, and related exhibits, shall be filed by the parties at or before commencement of the trial of the case, unless the Court in the particular case shall otherwise specify.  <u>A stipulation when filed need not be offered formally to be considered in evidence</u>."  (Emphasis added.)

### 2.    Petitioner's Argument

As best we understand petitioner's argument for our receiving the Tindall appraisal into evidence as expert testimony, it is as follows.  Respondent cannot fairly dispute the authenticity of the petition, including the attached Tindall appraisal.  Respondent must therefore stipulate the authenticity of the copy of the petition presented by petitioner.  The authenticity of the petition having been stipulated, it (including the Tindall appraisal) is in evidence, subject to any reservation noted as to materiality or relevance.  Because the Tindall appraisal is in evidence, the requirements governing the admission of expert testimony found in Rule 143(g) and our standing pretrial order are beside the point.

**[*14]** The following two sentences from petitioner's answering brief capture his argument (although they refer to another appraisal, the MPI appraisal, which is attached to the Form 706):

> Respondent states that "this Court will not admit an appraisal report as evidence of fair market value unless the author of the expert [sic] testifies at trial and is available for cross examination." (Resp. Br., p. 44.) This is true, but the MPI Appraisal was admitted in evidence by stipulation so that it was not necessary to have it admitted by the Court through Rule 143, which also should only apply if Petitioner called the appraiser to testify, which he did not.

Clearly, petitioner relies on the Tindall appraisal for Dr. Tindall's expert opinion. On the basis of appraisal, he proposes that we find the following fact: "The Tindall Appraisal determined that the proper weight in valuing the LLC to be given to the NAV and the historical distributions of the LLC is 20% and 80%, respectively." He argues:

> The Tindall Appraisal explains why Petitioner disavows those portions of the 706 by explaining why the value of the Decedent's interest should be $1,037,796.00 because the decedent's interest to be valued is an assignee interest instead of membership interest, and because the LLC is, at least, in part an operating company instead of a holding company. The Tindall Appraisal not only explains why Petitioner disavows these admissions in the 706 and the MPI Appraisal but also places the admissions in the 706 in proper context. The Tindal Appraisal also explains how the values of the LLC and the Decedent's interest are substantially understated [sic] in the 706. The basis for disavowing the admissions cannot be fully and impartially understood without admitting the Tindall Appraisal in evidence under Federal Rule of Evidence 106.

**[*15]**     3.     <u>Federal Rules of Evidence</u>

Rule 701 of the Federal Rules of Evidence provides that a lay witness may not offer an opinion based on scientific, technical, or other specialized knowledge. Rule 702 of the Federal Rules of Evidence permits expert testimony:  "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise".  Whether a particular witness possesses the necessary qualifications is a question of fact, which is for the court to decide, before the witness' testimony is received.  <u>See</u> <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 569 (1993).[1]  The procedures for presenting expert testimony to the Tax Court are, as described <u>supra</u>, set forth in Rule 143(g) and in our standing pretrial order.  Petitioner misreads our Rules if he thinks that Rule 91, governing stipulations for trial, can be used to end-run our procedural rules with respect to expert testimony or to prevent this Court from exercising its gatekeeper function with respect to expert testimony.

---

[1]In <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), clarified that that gatekeeper function applies to all expert testimony, not just testimony based in science.  Fed. R. Evid. 702 was amended in 2000 in response to <u>Daubert</u> and the many cases applying it, including <u>Kumho</u>.  <u>See</u> Fed. R. Evid. 702 advisory committee's note (2000 amendment), 28 U.S.C. app. at 893-896 (2000).

**[\*16]**    4.    <u>Stipulation Process</u>

The stipulation process is "the bedrock of Tax Court practice" and is designed "as an aid to the more expeditious trial of cases as well as for settlement purposes." <u>Branerton Corp. v. Commissioner</u>, 61 T.C. 691, 692 (1974). The Federal Rules of Civil Procedure do not contain a comparable rule. Initially, our Rules, i.e., the Rules of our predecessor, the United States Board of Tax Appeals, contemplated only stipulations of facts. <u>See</u> Rule 30, 1 B.T.A. 1291.[2] Now the stipulation process has broad scope and is not confined to the stipulation of facts or evidence. <u>See</u> Rule 91(a) note, 60 T.C. 1118; <u>Willamette Indus., Inc. v. Commissioner</u>, T.C. Memo. 1995-150, <u>aff'd</u>, 149 F.3d 1057 (9th Cir. 1998). Often, for instance, the parties in a case before the Tax Court will stipulate settled issues. <u>See, e.g.</u>, <u>Koons v. Commissioner</u>, T.C. Memo. 2013-94, at \*2 ("Several issues were settled by the parties as reflected in a stipulation of settled issues filed on February 9, 2011."). Facts are stipulated and come into evidence without the necessity of findings, <u>see, e.g.</u>, Rule 91(c); <u>Kensico Cemetery v. Commissioner</u>, 35 B.T.A. 498 (1937), <u>aff'd</u>, 96 F.2d 594 (2d Cir. 1938), although often we will explicitly find stipulated facts and incorporate them by reference into our findings,

_____

[2]Providing in relevant part: "The taxpayer and the Commissioner of Internal Revenue may, by stipulation in writing filed with the Board, or presented at the hearing, agree upon any facts involved in the case."

**[\*17]** see, e.g., Martell v. Commissioner, T.C. Memo. 2013-115, at \*2 ("Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference."). Certainly documents and papers are to be stipulated, and documents, papers or other exhibits annexed to or filed with it are considered part of the stipulation. Rule 91(a). A paragraph in a stipulation reciting that Exhibit X attached to the stipulation is an appraisal of Blackacre is conclusive that it is. Likewise, a stipulation that attached Exhibit Y is a nonparty's deposition is conclusive that it is. The authenticity of the documents is established, and that fact need not be found. If filed, the stipulation need not be offered into evidence. Rule 91(c). If offered by a party for the truth of the matters asserted, however, and not adopted by the declarant testifying at the current trial or hearing, both documents constitute hearsay, see Fed. R. Evid. 801, which may or may not be admissible, see id. 802. Rule 91 does not require that a hearsay objection be reserved in a stipulation, so were we to conclude that a deposition or appraisal is in evidence merely on account of its being attached to a stipulation, then a party's subsequent hearsay objection would be unavailing. Likewise, the specification in Rule 143(c) that "unadmitted allegations in pleadings do not constitute evidence" would have no force with respect to unadmitted averments in a pleading identified in, and attached to, a stipulation. Certainly, that cannot be

**[\*18]** so.  In <u>Minnick v. Commissioner</u>, T.C. Memo. 2012-345, principally involving the value of a conservation easement contributed to charity, the parties executed a stipulation of facts stating that "all exhibits attached to the stipulation 'may be accepted as authentic' and 'are incorporated in this stipulation and made a part hereof '."  <u>Id.</u> at \*18.  The taxpayers objected to four stipulated exhibits, appraisals of certain land, on the grounds that the exhibits were in substance expert witness reports that had not been exchanged in accordance with Rule 143 and had not been exchanged 14 days before trial as required by our standing pretrial order.  We thought that the taxpayers' objection had merit, and, although we admitted the four exhibits into evidence for other purposes, we declined to rely on them to the extent they opined on the value of the conservation easement.  <u>Id.</u> at \*20.[3]

---

[3]Although we have on occasion said that exhibits attached to a stipulation filed by the parties are in evidence or are part of the evidentiary record, the circumstances of those statements must be taken into account.  For example, in <u>Siegal v. Commissioner</u>, T.C. Memo. 1992-334, T.C.M. (RIA) para. 92,334, at 92-1714 n.5, we said that tax returns attached to the parties' stipulation of facts "become part of the evidentiary record when the stipulation is filed with the Court."  The taxpayers had reserved relevancy objections to the returns, which were their only objections and which we had overruled.  <u>Id.</u>, T.C.M. (RIA) para. 92,334, at 92-1712 n.2, 92-1714 n.5.  In <u>Hamdi v. Commissioner</u>, T.C. Memo. 1993-38, 1993 WL 20169, at \*8 n.8, <u>aff'd without published opinion</u>, 23 F.3d 407 (6th Cir. 1994), quoting Rule 91(c), we said:  "Under the Court's stipulation procedures the parties executed stipulation <u>and the exhibits attached thereto</u>, when

(continued...)

**[\*19]**      5.     <u>The Tindall Appraisal</u>

Petitioner did not call Dr. Tindall as a witness but asks us to rely on her

report (which, under our Rules, would serve as her direct testimony) as her expert

opinion. Petitioner has neither qualified Dr. Tindall as an expert entitled pursuant

to rule 702 of the Federal Rules of Evidence to give her opinion on technical

matters nor has he satisfied our procedural rules for expert testimony, found in

Rule 143(g) and in our standing pretrial order. In other words, petitioner has

failed to satisfy the preconditions for our receiving Dr. Tindall's opinion into

---

     [3](...continued)
filed with the Court, 'need not be offered formerly to be considered in evidence.'"
(Emphasis added.) The stipulation contained few statements of fact beyond the
parties' stipulation that the various attached documents were submitted by the
taxpayer to the Internal Revenue Service. <u>Id.</u>, 1993 WL 20169, at \*1 n.1. The
Commissioner did not concede the probative value of the documents but "agreed
to this type of stipulation in an effort to place something before the Court." <u>Id.</u>
Evidently concluding that the parties' intent in stipulating the documents was to
put the documents in evidence, we nevertheless cautioned: "However, the fact
that these documents are considered 'in evidence' does not thereby endow them
with evidentiary weight and value they do not otherwise possess." <u>Id.</u> at \*8 n.8.
In <u>Warner v. Commissioner</u>, T.C. Memo. 1984-582, T.C.M. (P-H) para. 84,582, at
84-2350 n.2, we dismissed the taxpayer's posttrial contention that certain jointly
stipulated documents relied on by the Commissioner were not in the record. We
said that, although in the stipulation the taxpayer had expressly reserved the right
to object to the admissibility of the documents attached thereto, he had failed to
raise any objection at trial. We concluded: "Thus, the record in this case includes
all of the exhibits attached to the stipulation."

**[\*20]** evidence. Because her report (i.e., the Tindall appraisal) is not in evidence, we may not consider her opinion.

### D.    Conclusion

The Tindall appraisal is excluded.[4]

### III.    Fair Market Value of Subject Interest

### A.    Introduction

Petitioner called no witness to testify to the value of the subject interest on the valuation date. Petitioner finds fault both with the MPI appraisal, on which he relied in reporting the value of the subject interest on the Form 706, and on Mr. Thomson's opinion as to the value of that property. He contends that there is sufficient evidence in the record from which the Court could determine the fair market value of the subject interest on the valuation date without relying on the conclusions either in the MPI appraisal or of Mr. Thomson. He contends that that value is less than the $1,788,000 he reported on the Form 706.

---

[4]A different appraisal, the MPI appraisal, is attached to the Form 706, which (including the MPI appraisal) is identified in the stipulation and attached as an exhibit. The MPI appraisal is offered by neither party solely as expert testimony, so that we do not exclude it, as we do the Tindall appraisal, for failing to satisfy the relevant rules relating to expert testimony. We do not, however, rely on it as expert testimony. See, e.g., Minnick v. Commissioner, T.C. Memo. 2012-245, at \*20 (admitting into evidence but not relying on appraisals not conforming to Rule 143 to the extent they opined on the value of the conservation easements in question).

[*21] To determine the fair market value of the subject interest, each of (1) the MPI appraisal, (2) respondent in explaining his adjustment to the value of the subject interest in the notice, and (3) Mr. Thomson started with $20,628,221 as the net asset value of the LLC. Each then made adjustments for lack of control and for lack of marketability (and those adjustments are the only thing about which they disagree). Petitioner first finds fault with the common starting point, claiming that the value of the LLC should not have been defined exclusively by reference to its net asset value (the excess of the value of its assets over its liabilities): "[T]he LLC is at least in part an operating company that should be valued giving some weight to the LLC['s] earnings and/or distributions." Petitioner next finds fault with respondent's (and Mr. Thomson's) classification of the subject interest as a membership interest in the LLC: "The Notice of Deficiency erroneously classified the Decedent's interest in the LLC for valuation purposes as a membership Interest. Such erroneous classification resulted in the failure of the experts to reflect appropriately the * * * [limitations attending a nonfamily member's interest] in determining the amount of the discounts for * * * minority interest [status] and for lack of marketability." Finally, petitioner finds fault generally with the amounts of Mr. Thomson's discounts.

**[*22]** B.    <u>Discussion</u>

    1.    <u>Member's Interest</u>

       a.    <u>Introduction</u>

Addressing first the second fault petitioner ascribes to respondent and Mr. Thomson's positions, we understand petitioner's argument to be that both respondent and Mr. Thomson erred in (1) not classifying the subject interest as a nonfamily member's interest (assignee's interest), and (2) failing to value the subject interest as an assignee's interest under the willing buyer-willing seller standard prescribed in section 20.2031-1(b), Estate Tax Regs. Specifically, petitioner contends that, in applying the willing buyer-willing seller standard, the hypothetical willing buyer must be assumed to be a nonfamily member, who would, in effect, be purchasing an assignee's interest since he could not become a member of the LLC without unanimous approval of all membership interests.

       b.    <u>Underlying Principles of Law</u>

Section 2001(a) imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." The value of the taxable estate is derived from the value of the gross estate. <u>See</u> sec. 2051. Section 2033 broadly provides that the "value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his

[*23] death."  Sections 2034 through 2045 then explicitly mandate inclusion of several more narrowly defined classes of assets.

The value of the subject interest was included in the value of the gross estate under section 2038(a), which includes in the value of a decedent's gross estate the value of all interests in property transferred before death where, on the date of death, the transfer was subject to change through the decedent's exercise of a power to "alter, amend, revoke, or terminate the transfer."

Generally, the value of an item of property included in the decedent's gross estate is the fair market value of the item at the time of the decedent's death or, if an election is made, on the alternate valuation date.  See sec. 20.2031-1(b), Estate Tax Regs.  "The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."  Id.

### c.    Discussion

We must determine whether respondent and Mr. Thomson erred in classifying the subject interest as a member's interest rather than classifying it as an assignee's interest.  A member's interest is more valuable than an equivalent percentage interest of an assignee because the member's interest can participate in

**[\*24]** management and control of the LLC. We think respondent and Mr. Thomson did not err. Decedent was a member of the LLC when she transferred the subject interest to the trust. We assume, therefore, that, until she made the transfer, she enjoyed all of the benefits and was saddled with all of the burdens attendant upon being a "member" of the LLC. The term "member's interest" (or the term "membership interest", which the parties use, but which we do not, because it is a term defined in the operating agreement to mean a member's proportional interest in capital) is both a convenient and an accurate classification for indicating that decedent's interest in the LLC was of the fullest kind; i.e., she shared in management and control and did not merely share in profits and losses. For the same reasons, the term is a convenient and accurate classification for the subject interest in the hands of the trust, which also was a member of the LLC. Moreover, there is no evidence that, on or before the valuation date, the trust distributed, sold, exchanged, or otherwise disposed of the subject interest, so that, possibly, on that date, it could more accurately be described as an assignee's interest. Therefore, because the term "member's interest" conveniently and accurately describes the rights inherent to a subject interest on the date decedent transferred it, on the date she died, and on the valuation date, neither respondent

**[\*25]** nor Mr. Thomson erred in classifying it as such (or, in their terms, classifying it as a "membership interest").

The fair market value of the subject interest on the valuation date is determined under the objective willing buyer-willing seller standard discussed supra. The willing buyer and willing seller are purely hypothetical persons, and their characteristics are not necessarily the same as the personal characteristics of the actual seller or a particular buyer. E.g., Chapman Glen Ltd. v. Commissioner, 140 T.C. __ (May 28, 2013). Certainly, in applying the willing buyer-willing seller standard to determine the value of the subject interest, it would be appropriate to take into consideration limitations in the operating agreement on the rights of a nonfamily member transferee to participate in control and management of the LLC and limitations on the transferee's rights otherwise to be treated as a member. Petitioner, however, seeks to collapse the two steps of the valuation process--i.e., (1) identify the property to be valued and its nature and character, and (2) objectively determine its value--into a single step. Petitioner would expand section 20.2031-1(b), Estate Tax Regs., beyond its intended scope by using the provision to redefine the character of the subject interest as an assignee's interest. See Kerr v. Commissioner, 113 T.C. 449, 469 (1999), aff'd, 292 F.3d (5th Cir. 2002). As discussed in the immediately preceding paragraph of this report, on

**[\*26]** the valuation date the subject interest was a member's interest. The holder of that interest, at that time, enjoyed fully the benefits and burdens of being a member of the LLC, including his or her inability to transfer all of those benefits and burdens to a nonfamily member transferee. The hypothetical willing buyer and hypothetical willing seller--"both having reasonable knowledge of relevant facts", sec. 20.2031-1(b), Estate Tax Regs.--would understand a member's interest to be so restricted, and would take that restriction into account in their negotiations of what a member's interest was worth. Mr. Thomson considered restrictions imposed on transferability of an interest in the LLC as a factor in his marketability discount analysis.

### d. Conclusion

Neither respondent nor Mr. Thomson erred in classifying the subject interest as a member's interest.

### 2. Appraisal Procedures

### a. Introduction

As found supra, Mr. Thomson considered the LLC to function primarily as a real estate holding company and, for that reason, relied exclusively on the discounted net asset value approach in valuing the subject interest. Petitioner

[*27] finds fault with Mr. Thomson's exclusive reliance on that approach.

Petitioner explains:

> The Decedent's interest in the LLC to be valued is an assignee interest, * * * and the hypothetical purchaser would not have any say in the LLC's decisions to make distributions, to sell the Building, or to liquidate, so the hypothetical purchaser's primary concern would be historical earnings and distributions. * * * Accordingly, this LLC must be valued giving primary weight in the valuation of the LLC to the capitalization of the historical distributions to its members.

### b. Discussion

It is perhaps a sufficient answer to petitioner's argument that we do not agree that the subject interest was an assignee's interest. Moreover, any concern that petitioner might have about a member's (or, indeed, an assignee's) lack of influence on decision making is properly addressed in the context of the lack-of-control discount applied by Mr. Thomson in determining the fair market value of the subject interest. Mr. Thomson explained that discount (describing it, alternatively, as a "minority interest discount") as follows: "The hypothetical minority interest investor cannot control, or has little influence on, the disposition of assets, the payment of distributions, the appointment of management, or other prerogatives of control. Therefore, a lack of control discount is applied to account for the absence of these control features."

**[*28]** It is true that Mr. Thomson considered the LLC to function primarily as a real estate holding company, and, for that reason, he excluded the market and income approaches to valuation, relying exclusively on a discounted net asset value approach. The LLC's principal asset, however, was the building, the value of which ($19,960,000) Mr. Thomson accepted from the LLC's partnership return and the building appraisal. The $19,960,000 value from the building appraisal was based exclusively on an income approach that used a discounted cashflow analysis. The authors of the building appraisal projected building income for six years, capitalized the sixth year's income to determine a terminal value, and discounted the resulting income stream to present value ($19,960,000). Thus, while Mr. Thomson's valuation of the LLC was based on the net asset value of the LLC's assets, the value he accepted for the LLC's principal asset, the building, was based on an income approach.

We have said: "It is well established that, in general, an asset-based method of valuation applies in the case of corporations that are essentially holding corporations, while an earnings-based method applies for corporations that are going concerns." Estate of Smith v. Commissioner, T.C. Memo. 1999-368, 1999 WL 1001184, at *5. That rule of thumb is no doubt based in part on the notion that a holding or investment company may be managed not for current income but,

[*29] rather, for appreciation in the value of its holdings.  If ownership interests in a holding or investment company are not traded in an established market, then net asset value may be the best indicator of the firm's value.  See, e.g., Hess v. Commissioner, T.C. Memo. 2003-251, 2003 WL 21991627, at *9; Estate of Ford v. Commissioner, T.C. Memo. 1993-580, 1993 WL 501917, at *13, aff'd, 53 F.3d 924 (8th Cir. 1995).  The point is well stated in Rev. Rul. 59-60, sec. 5(a), 1959-1 C.B. 237, 242:  "In general, the appraiser will accord primary consideration to earnings when valuing stocks of companies which sell products or services to the public; conversely, in the investment or holding type of company, the appraiser may accord the greatest weight to the assets underlying the security to be valued."

The LLC undoubtedly provided services to the public, viz, a fully leased gross rentable area of 77,725 square feet.  And although the members of the LLC may have had in mind the future appreciation of the building, we cannot but conclude that the LLC managed a going concern.  We have on occasion been presented with, and sanctioned, the valuation of a closely held real estate firm using a weighted approach, i.e., using both a net value approach and an income capitalization approach, attaching weight to each.  E.g., Estate of Andrews v. Commissioner, 79 T.C. 938, 956-957 (1982); Estate of Weinberg v. Commissioner, T.C. Memo. 2000-51.  We have here no evidence that an explicitly

[*30] income-based approach to valuing the subject interest would necessarily have reached a different valuation conclusion, or what that valuation conclusion would be.

Finally, the net asset value that Mr. Thomson was instructed to (and did) use was the same net asset value used in the MPI appraisal, which petitioner relied on in reporting the value of the subject interest on the Schedule G. "[V]alues or discounts reported or claimed on an estate tax return may be considered admissions and, to some extent binding or probative, restricting an estate from substituting a lower value without cogent proof that those admissions are wrong." Estate of Deputy v. Commissioner, T.C. Memo. 2003-176, 2003 WL 21396789, at *5 n.6; accord Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989). We have no cogent proof that the value that petitioner relied on in reporting the value of the subject interest on the Schedule G is wrong.

c.    Conclusion

The evidentiary record shows that the value of the LLC before determination of decedent's proportionate interest therein and application of discounts for lack of control and lack of marketability was no less than $20,628,221, the amount relied on by Mr. Thomson.

**[\*31]**      3.      <u>Discounts</u>

The parties do not dispute that, in valuing the subject interest, it is appropriate to take account of discounts for both lack of control and lack of marketability. Indeed, we have accepted both discounts when valuing stock of closely held corporations. <u>See, e.g.</u>, <u>Estate of Newhouse v. Commissioner</u>, 94 T.C. 193, 249 (1990). Petitioner disagrees, however, with Mr. Thomson's discounts of 10% and 26% for lack of control and lack of marketability, respectively. And while petitioner criticizes Mr. Thomson's methodologies for determining both discounts, he has provided no expert testimony from which we might draw different, greater values in those technical areas of analysis.

IV.      <u>Conclusion</u>

The value of the subject interest on the valuation date was $2,303,000, the value conceded by respondent. We redetermine a deficiency in Federal estate tax accordingly.

To reflect the foregoing,

                            <u>Decision will be entered under</u>

                            <u>Rule 155</u>.